Lawrence HALL et al.

v.

ST. HELENA PARISH SCHOOL BOARD et al.

James WILLIAMS, Jr., et al.

v.

IBERVILLE PARISH SCHOOL BOARD et al.

Yvonne Marie BOYD et al.

v.

POINTE COUPEE PARISH SCHOOL BOARD et al.

Terry Lynn DUNN et al.

v.

LIVINGSTON PARISH SCHOOL BOARD et al.

Donald Jerome THOMAS et al.

v.

WEST BATON ROUGE PARISH SCHOOL BOARD et al.

Robert CARTER et al.

v.

WEST FELICIANA PARISH SCHOOL BOARD et al.

Sharon Lynne GEORGE et al.

v.

C. Walter DAVIS, President, East Feliciana Parish School Board, et al.

Welton J. CHARLES, Jr., et al.

v.

ASCENSION PARISH SCHOOL BOARD et al.

Civ. A. Nos. 1068, 2921, 3164, 3197, 3208, 3248, 3253, 3257.

United States District Court
E. D. Louisiana,
Baton Rouge Division.
June 9, 1969.

**WEST, Chief Judge:**

These eight school cases have been remanded to this Court by the Fifth Circuit Court of Appeals with specific instructions as to the decree that must be entered herein. This Court had previously held that the freedom of choice plan under which these schools were being operated met all constitutional and other legal requirements. The Court of Appeals disagreed. A decree will, of course, be entered in accordance with that mandate, but because of the strong and sincere feeling of this Court that the mandate is both ill advised and legally wrong, I feel impelled to make my objections and reasons therefor a matter of record.

All eight school systems here involved are presently operating under the so-called Jefferson Plan, devised by and imposed upon these school systems by the Fifth Circuit Court of Appeals in August of 1967. After less than two years of operating under that plan, it was attacked, not by the plaintiffs herein, but by counsel for said plaintiffs, as not complying with the requirements of Green v. County School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (May, 1968), because of the fact that it was based primarily on the principle of freedom of choice. After hearing arguments of counsel, and after noting the *complete* and *total* absence of any evidence whatsoever, in every one of these cases, to the effect that there was a single pupil who had not been permitted to attend the school of his choice, or that there was a single pupil who had, by coercion or otherwise, been denied the opportunity to make a free, unfettered choice, or that a single pupil was, because of any state-imposed rule or policy, attending an inferior school because of his race or color, this Court held that the freedom of choice plan was, in fact and in law, working in the most democratic way possible and that thus all constitutional

requirements were being met insofar as assignment of students was concerned in these school systems. The mandate of *Green* is simply that there must be an end to a *"state-imposed"* dual system of schools—that *"state-imposed"* segregation" in schools must be removed. During the hearing before this Court on these cases, counsel for plaintiffs readily conceded, as indeed they must, that there is no *"state-imposed"* segregation in any of these schools. Realizing their inability to show any *"state-imposed"* segregation in these schools, plaintiffs then relied entirely on their contention that freedom of choice itself was unconstitutional. This contention is, of course, refuted by *Green* itself wherein it is stated:

> "We do not hold that 'freedom of choice' can have no place in such a plan. We do not hold that a 'freedom-of-choice' plan might of itself be unconstitutional, although that argument has been urged upon us. Rather, all we decide today is that in desegregating a dual system a plan utilizing 'freedom of choice' is not an end in itself."

Thus it is clear to this Court that freedom of choice is *not* unconstitutional. Indeed, it is the very essence of the democracy which the Constitution was designed to protect. If the freedom of choice plan has, in fact, eliminated a *"state-imposed"* system of segregated schools, then it cannot be said that the "freedom of choice" plan is being used as an "end in itself." Where the unrefuted evidence shows, as it does in these cases, that there is no longer any "state-imposed" dual system of schools remaining, and that an unfettered freedom of choice is enjoyed by *all* pupils, regardless of race, color, religion or national origin, then I say that regardless of the resultant makeup of the student bodies of these schools, the mandates of the United States Constitution, the Civil Rights Act of 1964, and the decision in *Green* have been met.

In reversing these cases and remanding them to this Court for the entry of the order which this Court, pursuant to that mandate, must now enter, the Fifth Circuit Court of Appeals makes the following statement:

> "Also the district court erred in holding that segregation which continues to exist after the exercise of unfettered free choice is 'de facto' segregation and as such constitutionally permissible."

They cite no legal authority for their conclusion because indeed they could find none. The "de facto" segregation referred to is, under the present state of the law as enacted by Congress, clearly permissible as is indicated by the Civil Rights Act of 1964, hereinafter referred to. As clearly evidenced by *Green*, it is only "state-imposed" segregation which violates the mandates of the United States Constitution. It is not a question of what I think the law ought to be, or what the Court of Appeals thinks it ought to be, it is rather what the Congress has declared it to be.

The Court then makes the rather amazing statement that:

> "If under an existent plan there are no whites, or only a small percentage of whites, attending formerly all-Negro schools, or only a small percentage of Negroes enrolled in formerly all-white schools, then the plan, *as a matter of law*, is not working." (Emphasis added.)

As a matter of what law? The only law cited in support of this statement is two of the Fifth Circuit's own prior decisions, Henry v. Clarksdale Municipal Separate Sch. Dist., 409 F.2d 682 (CA 5–1969) and Adams v. Mathews, 403 F.2d 181 (CA 5–1968). Conspicuously missing from the Court's citation of authority is any reference to the Civil Rights Act of 1964 itself which specifically provides:

> "Sec. 401.
>
> "(a) * * *

"(b) 'Desegregation' means the assignment of students to public schools and within such schools without regard to their race, color, religion, or national origin, *but 'desegregation' shall not mean the assignment of students to public schools in order to overcome racial imbalance.*" (Emphasis added.)

"Sec. 407. (a) * * * provided that nothing herein shall empower any official or court of the United States to issue any order seeking to achieve a racial balance in any school by requiring the transportation of pupils or students from one school to another or one school district to another in order to achieve such racial balance,

* * *."

I have, in prior decisions concerning these cases, cited the above authority several times in support of the proposition that any order such as the one the Court of Appeals now mandates me to issue is contrary to law, purely and simply. I reiterate that this is still my belief. There is, in my opinion, no authority in the law for this Court to issue such an order. There is, to my knowledge, no law or constitutional provision whatsoever which could possibly be construed as authorizing this or any other Court to ignore the above quoted congressional mandate. It is my sincere belief that all constitutional and statutory mandates are recognized and complied with when *all* students, regardless of race or color, are, in fact, allowed to attend the school of their free choice. There has been no showing of any kind in these cases that such is not the case in all of the school districts here involved. It seems to me that the time has come for the Federal Courts to cease experimenting with the public school systems of this country. They have displayed quite clearly their lack of expertise in the field of school administration. The time has come for the Courts to allow the schools to operate in accordance with the law as it is, and not force them to operate in accordance with the personal decrees of Judges, unsupported by either constitutional mandate or congressional legislation.

■■■ It also seems to me that it is time for the Courts to recognize the separation of powers so carefully spelled out in the United States Constitution, and to relinquish, once and for all, the law-making powers to the Congress where, under the Constitution, they rightly belong. It is not a question of how the Courts think the student bodies in public schools should be made up. It is rather a question of whether or not the constitutional rights of *all* students are being protected. Constitutional rights are not necessarily what the Court thinks they should be. They are rather what the Constitution itself declares them to be. The statutory enactments of Congress also become the law of the land unless and until such enactments are declared to be violative of the Constitution. There has been no indication as yet that the Civil Rights Act of 1964 as enacted by Congress is, in whole or in part, unconstitutional. On the contrary, its validity has been reaffirmed many times by the highest Court of the land. One of these provisions, as set forth above, clearly limits the definition of "desegregation" and clearly forbids this Court or any other Court from issuing orders designed to require the transfer of students from one school to another for the purpose of bringing about a racial balance in the student bodies of the respective schools. This provision has never been held unconstitutional, and therefore this Court, and all other Courts, should be bound by that enactment. Any order issued by this Court or any other Court in contravention of that provision is, in the opinion of this Court, an invalid order and one which of necessity usurps the power of Congress.

There is no requirement in the law, as embodied in the Constitution of the United States or as enacted by Congress, save for the court-made law of this Circuit, that there be no all-white schools or

no all-negro schools. Congress specifically ordained that "desegregation" shall not mean the assignment of students to public schools in order to overcome racial imbalance. The Courts should be bound by those declarations of Congress. It is not a question of what the Court thinks the law should be. It is a question of what Congress has said the law is.

■■ The constitutional rights of all pupils must be protected and they are indeed protected in the best possible way by the provisions of the Civil Rights Act of 1964, as enacted by Congress. An honest, unfettered freedom of choice protects the rights of all pupils regardless of the resultant makeup of the student bodies involved. Under the clear language of the Act, students have no more right to have integrated classes than to have segregated classes. But they *do* have a right not to be denied access to classes or schools of their choice because of their race, color, religion, or national origin. This was the clear intent of Congress when it passed the Civil Rights Act and this intent was clearly recognized by the United States Supreme Court in *Green* when it said over and over again that it was a "state-imposed" dual system of education that was constitutionally objectionable. The Federal Courts should be bound by these constitutional and congressional mandates. If the law, as enacted, is not sufficient to adequately protect the rights of *all* citizens, then the Congress, and not the Courts, should change it.

I once again make the observations contained herein because I am sincerely disturbed over what I believe to be a serious breakdown in the separation of powers between the legislative and judicial branches of our Government. I make these observations because I fear for the very future of the public school system in this Country if the Federal Courts, who have so clearly demonstrated their ineptness at running public school systems, persist in their present policy of governing school boards by personal decree rather than simply requiring them to administer the schools in accordance with the clear language of the law as enacted by Congress.

The decree which I have been ordered to enter in these cases will be entered only because of the mandate directed to me by the Fifth Circuit Court of Appeals. I fervently hope, however, that the school boards involved will seek redress from these orders from both the Congress and the Supreme Court of the United States. I believe a full review of this entire matter by the Congress and by the Supreme Court of the United States is long past due. The issue is clear and serious. The issue is simply whether or not the Federal Courts, by judicial decree, shall be allowed to continue to substitute their version of what they think the law ought to be for what the legislative branch of the Government has decreed it to be.

It is an unpleasant task indeed for a Judge of a District Court to have to take such serious issue with the pronouncements of Appellate Courts. But since I believe it to be my duty to interpret the law as I understand it to be, I would remiss in my duty if I did not make a record in these cases of what I believe the law to be.

Because, and only because of the mandate directed to me by the Fifth Circuit Court of Appeals, the order attached hereto will be entered in each of these eight cases.

ORDER

Pursuant to the mandate of the Fifth Circuit Court of Appeals handed down in these cases on May 28, 1969:

It is ordered that each defendant school board involved herein shall promptly submit to the Office of Education, United States Department of Health, Education and Welfare (H.E.W.), a detailed plan of their existing method of operation, including their method of student and faculty assign-

ment, staff assignment, transportation procedures, and their method of handling all other matters pertaining to school activities, and each defendant school board shall, *within thirty (30) days of the date of this order*, develop, in conjunction and cooperation with the experts of such office and submit to this Court a new plan of operation for each school system involved herein, to become effective with the commencement of the 1969–70 school year, which said plan shall insure the operation of each school system on a unitary, nondiscriminatory basis, and shall meet the standards required by the holdings in the case of Green v. County School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716; Raney v. Board of Education, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727; and the holding of the United States Fifth Circuit Court of Appeals as enunciated by them on May 28, 1969, in the decision in which the mandate to issue this order is contained giving due consideration to the practical and administrative problems of each defendant board. Such plan, if agreed upon by the defendant board in question and H. E. W., will be approved by this Court, subject to the right of the plaintiff to file objections or suggested amendments thereto within ten (10) days from the date such plan is filed.

If in any instance an agreed plan is not forthcoming pursuant to this order, the defendant board or boards shall file its recommended plan, and plaintiffs may also file a recommended plan, all within the thirty (30) day period commencing with the date of this order, after which this Court will, with or without a hearing, proceed to enter its decree or to enter such other order or orders as it may deem necessary.

In executing the foregoing order, all parties are directed to proceed without delay in order that the new plan may be completed and approved by the District Court no later than July 25, 1969, as required by the mandate of the Fifth Circuit Court of Appeals.