Vertrees MOSES et al.

v.

WASHINGTON PARISH SCHOOL BOARD et al.

Civ. A. No. 15973.

United States District Court
E. D. Louisiana,
New Orleans Division.

July 2, 1969.

See also 276 F.Supp. 834.

Robert Roberts, New Orleans, La., Richard B. Sobol, Washington, D. C., for plaintiffs.

Welton O. Seal, Seal, Lee & Crain, Bogalusa, La., W. W. Erwin, Dist. Atty. for the 22nd Judicial District, France W. Watts, Jr., Franklinton, La., for School Board.

## OPINION AND ORDER

RUBIN, District Judge.

The Washington Parish School Board has been operating its thirteen schools under a freedom of choice plan of desegregation. Since the plan has proved unsuccessful in desegregating the school system, this Court ordered the defendants to assign Negro students to five of the eight formerly all-white schools for the 1968–69 school year in order to achieve a four to one ratio of white to black students in those schools. Three all-white schools were excluded from this order with consent of the parties because no Negro students resided within the areas served by these schools.[1] The other five schools remained all-Negro.

On January 14, 1969, this Court ordered the defendants to modify their plan to eliminate the five all-Negro schools in the school system for the 1969–70 school year. The school board has now submitted a plan. In accordance with the discussion in Moore v. Tangipahoa Parish School Board, E.D. La.1969, 304 F.Supp. 244, decided this date, the plan will be approved to the extent it complies with constitutional requirements.

In their plan the defendants divided the parish into seven districts, coterminus with the tax districts. All students,

---

1. Actually, a small number of Negro students did reside within the area served by one of these school districts but those students did not desire to attend that school.

white and black, residing within each district would attend the schools located within that district except in the Angie District where it is proposed that students have the freedom to choose to attend the Angie School (which has been predominantly white) or Wesley Ray School (which has been all-Negro). The defendants propose to close four of the all-Negro schools. The only all-Negro school that the defendants would not close is the Wesley Ray School located in the Angie District.

Among the schools proposed to be closed are Washington Parish High School and Washington Parish Elementary School. The board proposes to assign students who would have attended those schools to Franklinton High and Franklinton Elementary. This would result in assigning a total of 1,340 students to Franklinton High, although its capacity is only 993, and 1,469 students to Franklinton Elementary, with a capacity of only 910. The board proposes to remedy the overcapacity by leasing and remodeling a metal building at the Fair Grounds at a cost of some $30,000 to $40,000. At best, this would still be an inferior school building. Meanwhile, Washington Parish Elementary and High Schools, which are clearly adequate school plants, would stand vacant. The sole justification for this is that students at the schools proposed to be closed have inferior educational accomplishments and have scored lower than white students in the two Franklinton schools on achievement tests. The Superintendent of the School Board testified that he thought that the proposed plan would provide the best educational opportunity for the coming school year.

It is also proposed to close the Vernon School and the Jones Creek School. Students who would have attended Vernon will attend Mt. Hermon. This school has a rated capacity of 700 students and would be required to house an estimated 745 students. Varnado School would accommodate its own student body and those who relocated from the Jones

Creek School, a total of 539 in a building with a capacity of 511. Neither the Center nor the school board thinks that these relatively small overassignments will be difficult to accommodate.

If schools must be closed and students assigned to new schools, this must not be done solely on the basis of their race. Similarly, the faculty and staff of the schools must be located without discrimination because of race.

Subsequent to the date of the hearing, the school board filed an ex parte affidavit proposing to accommodate the extra students at the Franklinton schools in temporary buildings rather than in the Fair Grounds structure. Counsel for the defendants also argued that the plan complied with the Court's prior order of January 14, 1969. The proposal with respect to the schools in the Franklinton District may involve constitutional and not merely administrative issues. Therefore, in order to afford the defendants an opportunity to adduce any additional evidence they want with regard to the proposal for the Franklinton District, and to afford the same opportunity to the plaintiffs, a hearing will be held by Judge Frederick J. R. Heebe on August 5, 1969, at 2:00 p. m., only on the question of the plan for educating students who reside in the Franklinton District.

■ There is no serious problem of overcapacity as a result of the proposed closing of the Negro schools in the Varnado and Mt. Hermon Districts. The Jones Creek Elementary School is in an inferior school building. While the defendants might well continue to use the other Negro school they propose to close, Vernon School, the result of closing it is not per se discriminatory when the plan is considered as a whole with the changes required by the Court. Whether or not this single school should be closed then becomes a matter of administrative judgment for the school board, not a constitutional issue for the Court so long as the reassignment of students and faculty is made in such a manner as to promote the accomplishment of a unitary system.

There are 620 students residing within the Angie District—129 white students and 491 black students. Each student in the district would be free to choose either the formerly predominantly white Angie School or the all-Negro Wesley Ray School. No white child has yet chosen to attend an all-Negro school in Washington Parish under freedom of choice; hence, it is hardly likely that any white child in Angie District would choose to attend Wesley Ray School. Moreover, in view of the few number of Negro children that have freely chosen to attend formerly all-white schools in Washington Parish, we cannot expect many Negro students to choose to attend Angie School. The Angie District, then, would still contain an all-Negro school and a formerly all-white school with but a relatively few number of Negro students in attendance.

■■ The school board plan is based on two considerations. It is argued that total desegregation of both schools would leave only a small number of white students in each school, that the white students would therefore flee the school system, and that the result would be two virtually all-black schools rather than one. The board further contends that, even if all the present white students remain, schools with a heavy Negro majority and relatively few whites are educationally unsound.[2] However, while this opinion was being written, the Fifth Circuit Court of Appeals announced its decision in United States v. Jefferson County Board of Education, (Docket No. 27445, 5th Cir., June 26, 1969), and in that opinion said that the fact that white students would not attend formerly all-Negro schools "is not a legal argument," and the court ordered plans proposed without regard to this consideration. A number of higher court decisions tell us without reservation or equivocation that the Constitution requires a fully desegregated unitary school system in Septem-

ber 1969. Hall v. St. Helena Parish School Board, (Docket No. 26450, 5th Cir., May 28, 1969); Henry v. Clarksdale Municipal Separate School District, 409 F.2d 682 (5th Cir., 1969); Adams v. Mathews, 403 F.2d 181 (5th Cir. 1968); United States v. Jefferson County Board of Education, *supra*. See also the discussion in Moore v. Tangipahoa Parish School Board, *supra*. The United States Supreme Court and the Fifth Circuit have also held that an opposite result may not be reached merely because a method of assignment that creates a unitary system will result in schools with heavy Negro majorities. Green v. County School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Raney v. Board of Education of the Gould School District, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727 (1968); Anthony v. Marshall County Board of Education, 409 F.2d 1287 (5th Cir., April 15, 1969). These cases preclude approval of the board's plan with respect to the Angie District and the continuation of Wesley Ray as an all-Negro school.

The Educational Resource Center on School Desegregation has recommended that the two schools be paired, one to serve as an elementary school for all of the students in the district and the other to serve as the high school. This recommendation is meritorious and would accomplish the desired result. However, we feel that a geographic zoning plan should be adopted. This would comport with the defendants' geographic zoning plan for the desegregation of the other schools in the parish and would be administratively easier to implement. For these reasons we have divided the Angie District into two zones, corresponding to the zones adopted by the Court in its order of January 26, 1968, as indicated on the annexed map of Angie District. All of the students, white and black, within these zones in the Angie District

---

2. This view is supported by the Report of the Louisiana Public Affairs Research Council, "Improving Quality During School Desegregation."

will attend the school located in their respective zone.

The author of this opinion assumes full responsibility for it. However, as the parties are aware, this case is assigned to Judge Frederick J. R. Heebe, and the hearing was held by me only because of Judge Heebe's temporary absence from the city. Further hearings will hereafter be held by Judge Heebe. For this reason I have asked Judge Heebe to review this opinion and order, and I am authorized to state that he concurs in it.

## ORDER

IT IS ORDERED that the Washington Parish School System hereafter be OPERATED as follows:

## I. GENERAL PROVISIONS

A. All classroom assignments shall be made on a racially non-discriminatory basis and in such a manner that no class is racially identifiable.

B. All educational programs, activities, and services, curricular or extracurricular, sponsored, conducted, operated or supported by the Washington Parish School System shall be run on a racially non-discriminatory basis.

C. All school facilities, recreational areas, and meeting rooms shall be utilized in a non-discriminatory manner.

D. All school-sponsored organizations shall be run on a racially non-discriminatory basis.

E. The principal of each of the schools that will be closed shall be assigned either as a principal to some other school, or as an assistant principal in a school that a member of the opposite race is serving as principal, unless it is determined in a particular instance that this is not educationally feasible for a valid reason not related to race.

F. Teacher assignments in each school shall be made so that the ratio of white to Negro teachers in each school approximates the ratio of white to Negro teachers in the Washington Parish School System.

G. Principals, teachers, administrative personnel, members of the professional staff, athletic coaches, and other persons in positions of responsibility or authority shall not be assigned, promoted, demoted, or dismissed on a racially discriminatory basis, nor in any manner that makes a school racially identifiable by the race of its staff. Any personnel displaced as a result of a school closing shall be assigned to a similar position in some other school on a racially non-discriminatory basis. This shall not prevent the school board from failing to continue the employment of any teacher who is not entitled to tenure under state law, so long as its decision is reached without racial discrimination of any kind.

H. No employee or future applicant for employment in the Washington Parish School System in any capacity shall be refused employment, hired, fired, promoted, demoted, or assigned on a racially discriminatory basis, nor shall any contract for bus or other services be let or terminated on a racially discriminatory basis.

I. In hiring teachers in the future, the school board shall make every effort to maintain the same approximate ratio of white to Negro teachers, administrators, and athletic coaches as that existing in the 1969–70 school year. This shall not prevent the school board from setting objective criteria for employment or from hiring the personnel best qualified to do a specific job, so long as its decision is reached without racial discrimination.

J. All bus routes shall be planned and the assignment of students to busses shall be made on a racially non-discriminatory basis according to natural transportation patterns. All bus service shall be rendered on a like basis to all students without regard to their race.

K. In accordance with the Jefferson Decree issued by this court on October 19, 1967:

"The defendants shall provide remedial education programs which permit students * * * who have previously attended segregated schools to overcome past inadequacies in their education."

The Superintendent of Schools shall request the assistance of the Educational Resource Center on School Desegregation in developing remedial programs and in obtaining such federal funds as may be available. The Superintendent of Schools shall file a report with the court, opposing counsel and the Center by August 15, 1969, concerning the programs to be offered in the 1969–70 school year.

L. In-service teacher training programs shall be offered so that teachers may remedy any inadequacies in their preparation, and so that they may be better prepared to deal with the problems arising from school desegregation. Such programs shall be implemented as soon as possible and no later than September 1969. The Superintendent of Schools shall request the assistance of the Educational Resource Center on School Desegregation in developing training programs and in obtaining such federal funds as may be available for them. The Superintendent of Schools shall file a report with the court, opposing counsel, and the Center by August 15, 1969, concerning the programs that were offered this summer and those that will be offered during the 1969–70 school year.

M. No student shall be prevented from participating in athletic contests, or any other activity, conducted or sponsored by the Washington Parish School System as a result of changes in school or class assignment made to effect this Order.

N. The selection of sites for schools to be constructed in the future, the selection of schools to be enlarged or altered, and all other future construction programs shall effectuate the development and continuation of a unitary school system serving the educational needs of the community without regard to race.

O. In accordance with the Order of this court of October 19, 1967, all appropriate measures shall be promptly and firmly taken at all times to discourage, suppress, discipline, and otherwise punish physical abuses, retaliation, harassment, name-calling, and similar treatment of pupils of either race by pupils of another race on a racial basis.

P. The Superintendent of Schools shall report to the court, opposing counsel, and the Educational Resource Center on School Desegregation by August 15, 1969, and each year thereafter, the number of students by race assigned to each classroom in each grade for all schools in Washington Parish, and whether the classroom is located in the school building itself or whether it is a portable classroom or located in a newly leased or constructed facility. The report shall indicate the number of teachers, coaches, and administrators of each race assigned to each school, and it shall include the name of the principal of each school in the system, and his race, and the name and race of the assistant principal, if any. The report shall also indicate the position and school to

which the principals, teachers, administrative personnel, members of the professional staff, athletic coaches, and other employees of the closed schools are reassigned for the 1969–70 school year.

Q. Jurisdiction is retained by the court. Leave is granted all parties to petition from time to time for any improvements or modifications to the plan that might aid in the operation of a racially non-discriminatory, unitary school system.

R. A copy of this Order shall be distributed to every employee of the Washington Parish School Board. Copies shall also be made available to each student and to the parents of each student at each school, and at the school board office.

S. This Order supersedes all orders previously issued by the court.

## II. SPECIFIC PROVISIONS

The schools in each district in Washington Parish shall hereafter be operated as follows:

A. Each student shall attend school in the district in which he resides.

B. *Mt. Hermon District*
   1. The Vernon School shall be closed.
   2. All students residing within the Mt. Hermon District shall attend the Mt. Hermon School.

C. *Franklinton District*
   1. All students residing within the Franklinton District shall attend school in the Franklinton District.
   2. The specific assignment of students to the schools within that district must await the decision on the hearing set for August 5, 1969.

D. *Thomas District*
   1. All students residing within the Thomas District shall attend the Thomas School.

E. *Pine District*
   1. All students residing within the Pine District shall attend the Pine School.

F. *Enon District*
   1. All students residing within the Enon District shall attend the Enon School.

G. *Angie District*
   1. The Angie District is divided into two zones as indicated on the annexed map.
   2. All students residing within the zone in which Wesley Ray School is located shall attend the Wesley Ray School.
   3. All students residing within the zone in which Angie School is located shall attend the Angie School.

H. *Varnado District*
   1. The Jones Creek School shall be closed.
   2. All students residing within the Varnado District shall attend the Varnado School.

## III. APPENDIX

The school board is urged to appoint one or more biracial committees in each ward composed of parents, teachers, and recognized community leaders of both races. These committees should consider and make recommendations about such matters as changes in school names, revision of the grading system, improvement of school facilities including libraries, means of easing tension in the community, ways to make desegregation work more effectively, programs that parents may participate in, and possible solutions to problems that may arise due to school desegregation. The committees should have no authority to make decisions of any kind, and their formation shall not in any way deprive the school board of any power given it by state law, or any duty imposed on it by state law, or by the United States Constitution.