# RANEY et al. v. BOARD OF EDUCATION OF THE GOULD SCHOOL DISTRICT et al.

No. 805.   Argued April 3, 1968.—Decided May 27, 1968.

*Jack Greenberg* argued the cause for petitioners. With him on the brief were *James M. Nabrit III* and *Michael Meltsner*.

*Robert V. Light* argued the cause for respondents. With him on the brief was *Herschel H. Friday*.

*Louis F. Claiborne* argued the cause for the United States, as *amicus curiae*. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Pollak, Lawrence G. Wallace,* and *Brian K. Landsberg*.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

This case presents the question of the adequacy of a "freedom-of-choice" plan as compliance with *Brown* v.

*Board of Education*, 349 U. S. 294 (*Brown II*), a question also considered today in No. 695, *Green* v. *County School Board of New Kent County, ante,* p. 430. The factual setting is very similar to that in *Green.*

This action was brought in September 1965 in the District Court for the Eastern District of Arkansas. Injunctive relief was sought against the continued maintenance by respondent Board of Education of an alleged racially segregated school system. The school district has an area of 80 square miles and a population of some 3,000, of whom 1,800 are Negroes and 1,200 are whites. Persons of both races reside throughout the county; there is no residential segregation. The school system consists of two combination elementary and high schools located about 10 blocks apart in Gould, the district's only major town. One combination, the Gould Schools, is almost all white and the other, the Field Schools, is all-Negro. In the 1964–1965 school year the schools were totally segregated; 580 Negro children attended the Field Schools and 300 white children attended the Gould Schools. Faculties and staffs were and are segregated. There are no attendance zones, each school complex providing any necessary bus transportation for its respective pupils.

The state-imposed segregated system existed at the time of the decisions in *Brown* v. *Board of Education,* 347 U. S. 483, 349 U. S. 294. Thereafter racial separation was required by School Board policy. As in *Green,* respondent first took steps in 1965 to abandon that policy to remain eligible for federal financial aid. The Board adopted a "freedom-of-choice" plan embodying the essentials of the plan considered in *Green.* It was made immediately applicable to all grades. Pupils are required to choose annually between the Gould Schools and the Field Schools and those not exercising a choice are assigned to the school previously attended.

The experience after three years of operation with "freedom of choice" has mirrored that in *Green*. Not a single white child has sought to enroll in the all-Negro Field Schools, and although some 80 to 85 Negro children were enrolled in the Gould Schools in 1967, over 85% of the Negro children in the system still attend the all-Negro Field Schools.

This litigation resulted from a problem that arose in the operation of the plan in its first year. The number of children applying for enrollment in the fifth, tenth, and eleventh grades at Gould exceeded the number of places available and applications of 28 Negroes for those grades were refused. This action was thereupon filed on behalf of 16 of these children and others similarly situated. Their complaint sought injunctive relief, among other things, against their being required to attend the Field Schools, against the provision by respondent of public school facilities for Negro pupils inferior to those provided for white pupils, and against respondent's "otherwise operating a racially segregated school system." While the case was pending in the District Court, respondent made plans to replace the high school building at Field Schools. Petitioners sought unsuccessfully to enjoin construction at that site, contending that the new high school should be built at the Gould site to avoid perpetuation of the segregated system. Thereafter the District Court, in an unreported opinion, denied all relief and dismissed the complaint. In the District Court's view the fact that respondent had adopted "freedom of choice" without the compulsion of a court order, that the plan was approved by the Department of Health, Education, and Welfare, and that some Negro pupils had enrolled in the Gould Schools "seems to indicate that this plan is more than a pretense or sham to meet the minimum requirements of the law." In light of this conclusion the District Court held that petitioners were not entitled to the

other relief requested, including an injunction against building the new high school at the Field site. The Court of Appeals for the Eighth Circuit affirmed the dismissal. 381 F. 2d 252. We granted certiorari, 389 U. S. 1034, and set the case for argument following No. 740, *Monroe* v. *Board of Commissioners of the City of Jackson, post,* p. 450.

The Court of Appeals suggested that "no issue on the adequacy of the plan adopted by the Board or its implementation was raised in the District Court. Issues not fairly raised in the District Court cannot ordinarily be considered upon appeal." 381 F. 2d, at 257. Insofar as this refers to the "freedom-of-choice" plan the suggestion is refuted by the record. Not only was the issue embraced by the prayer in petitioners' complaint for an injunction against respondent "otherwise operating a racially segregated school system" but the adequacy of the plan was tried and argued by the parties and decided by the District Court. Moreover, the Court of Appeals went on to consider the merits, holding, in agreement with the District Court, that "we find no substantial evidence to support a finding that the Board was not proceeding to carry out the plan in good faith." *Ibid.*[1] In the circumstances the question of the adequacy of "freedom of choice" is properly before us. On the merits, our decision in *Green* v. *County School Board, supra,* establishes that the plan is inadequate to convert to a unitary, nonracial school system. As in *Green,* "the school system remains a dual system. Rather than further the dismantling of the dual system, the plan has operated simply to burden children and their parents with

---

[1] Compare the developing views of the feasibility of "freedom-of-choice" plans expressed by various panels of the Court of Appeals for the Eighth Circuit in *Kemp* v. *Beasley,* 352 F. 2d 14; *Clark* v. *Board of Education,* 374 F. 2d 569; *Kelley* v. *Altheimer,* 378 F. 2d 483; *Kemp* v. *Beasley,* 389 F. 2d 178; and *Jackson* v. *Marvell School District No. 22,* 389 F. 2d 740.

a responsibility which *Brown II* placed squarely on the School Board. The Board must be required to formulate a new plan and, in light of other courses which appear open to the Board, such as zoning, fashion steps which promise realistically to convert promptly to a system without a 'white' school and a 'Negro' school, but just schools." *Id.,* at 441–442.

The petitioners did not press in the Court of Appeals their appeal from the denial of their prayer to have the new high school facilities constructed at the Gould Schools site rather than at the Field Schools site. Due to the illness of the court reporter there was delay in the filing of the transcript of the proceedings in the District Court and meanwhile the construction at the Field Schools site was substantially completed. Petitioners therefore modified their position and urged in the Court of Appeals that respondent be required to convert the Gould Schools to a completely desegregated high school and the Field site to a completely desegregated primary school. The Court of Appeals rejected the proposition on the ground that it "was not presented to the trial court and no opportunity was afforded the parties to offer evidence on the feasibility of such a plan, nor was the trial court given any opportunity to pass thereon." 381 F. 2d, at 254. Since there must be a remand, petitioners are not foreclosed from making their proposal an issue in the further proceedings.[2]

---

[2] The Court of Appeals, while denying petitioners' request for relief on appeal, did observe that

"there is no showing that the Field facilities with the new construction added could not be converted at a reasonable cost into a completely integrated grade school or into a completely integrated high school when the appropriate time for such course arrives. We note that the building now occupied by the predominantly white Gould grade school had originally been built to house the Gould High School." 381 F. 2d, at 255.

Finally, we hold that in the circumstances of this case, the District Court's dismissal of the complaint was an improper exercise of discretion. Dismissal will ordinarily be inconsistent with the responsibility imposed on the district courts by *Brown II*. 349 U. S., at 299–301. In light of the complexities inhering in the disestablishment of state-established segregated school systems, *Brown II* contemplated that the better course would be to retain jurisdiction until it is clear that disestablishment has been achieved. We agree with the observation of another panel of judges of the Court of Appeals for the Eighth Circuit in another case that the district courts "should retain jurisdiction in school segregation cases to insure (1) that a constitutionally acceptable plan is adopted, and (2) that it is operated in a constitutionally permissible fashion so that the goal of a desegregated, non-racially operated school system is rapidly and finally achieved." *Kelley* v. *Altheimer,* 378 F. 2d 483, 489. See also *Kemp* v. *Beasley,* 389 F. 2d 178.

The judgment of the Court of Appeals is reversed and the case is remanded to the District Court for further proceedings consistent with this opinion and with our opinion in *Green* v. *County School Board, supra.*

*It is so ordered.*