**Onesephor BROUSSARD et al.,**
**Appellants,**

v.

**The HOUSTON INDEPENDENT SCHOOL DISTRICT et al.,**
**Appellees.**

No. 24018.

United States Court of Appeals
Fifth Circuit.

Oct. 2, 1968.

Arthur Mandell, Joseph L. Tita, William L. Wood, Jr., Houston, Tex., for appellants.

Joe H. Reynolds, Houston, Tex., for appellees.

Anne Gross Feldman, Robert L. Carter, New York City, Al Schulman, Houston, Tex., amicus curiae.

Before RIVES and WISDOM, Circuit Judges, and CONNALLY, District Judge.

CONNALLY, District Judge:

As noted in the original opinion, this action was filed in the court below as a class action, in equity, to restrain the expenditure of what then remained uncommitted of the proceeds of a $59 million bond issue for school construction and improvement. The injunctive relief prayed for was denied both below and here. It appears without dispute that now, or by the opening of school in the early days of September, 1968, all of the construction of which plaintiffs made complaint is or will be completed, save and except an administration building, no part of which will be used for classroom purposes, and that substantially all of the funds in issue have heretofore been expended. Thus the only issue raised by the pleadings and the trial below has become moot. Both the majority and the dissenting opinions have discussed this controversy fully and at length. To dwell further upon it is but to beat the dead horse.

In their petition for rehearing plaintiffs contend that though the building program be complete, upon their request for "further relief" this Court should remand the action to the District Court to permit plaintiffs to seek an order as to how the new buildings may best be used to further and promote integration. But this action is not the usual "school integration" case wherein the District

Court is charged with the duty of retaining jurisdiction to shepherd the school district along its path from segregation to integration. As heretofore noted, such an action has been pending against this defendant, in the Southern District of Texas, for many years where all questions of this nature appropriately may be raised.

The motion to dismiss for mootness is granted.

The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.

WISDOM, Circuit Judge (dissenting).

I respectfully dissent. This case is not moot.

The Board erred.[1] The district court erred. This Court erred.[2] But we are not now powerless to fashion a remedy to reduce the impact of the error.

It is, of course, too late to enjoin construction of a building that is already up. It is not too late to enjoin future construction of buildings. True, Houston's 59 million dollar school program, the immediate cause for this litigation, has been completed. But the building and expansion of public schools go on endlessly. I would reverse and remand this case with instructions that the district court enjoin the Board from engaging in future school construction without first considering the effect a proposed new location or expansion foreseeably may have upon the conversion of the dual system of segregated schools to a unitary, nonracial system.

That is not enough. The harm to the Negro plaintiffs did not stop with completion of the construction; that was when it began. Segregation through schoolsite selection is a continuing and expanding process that widens the gap between the races because a white school

---

1. The record supports the plaintiffs' contention that the Houston school construction program perpetuates the dual system. In its supplemental opinion the majority stated that "admittedly the Houston school authorities did not affirmatively consider" the "effect which a proposed new location or expansion might have upon the question of integration". The majority conceded that this "mandate" was imposed by *Jefferson* and "more clearly spelled out" in United States v. Board of Public Instruction of Polk County, Florida, 5 Cir., 1968, 395 F.2d 66.

2. The opinions of this Court were in the printer's hands before May 27, 1968, the date of the Supreme Court's decision in Green v. County School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716. *Green* settled beyond any argument that the Houston School Board failed to meet constitutional standards. In the instant case the question before the Board was whether, in a context necessarily involving a choice of alternatives, a school board should select sites tending to erase the effects of the dual system of legalized segregated schools or is free to select sites tending to maintain segregation (or token desegregation).

The Board faced up to the issue, but resolved it, in reliance on Briggs v. Elliott, E.D.S.C.1955, 132 F.Supp. 776, and "freedom of choice", by determining that there "is no affirmative duty on the School District to consider race in the selection of school sites". *Green* makes short work of disposing of this notion: Schools boards which have operated "state-compelled dual systems were nevertheless clearly charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch. * * * If there are reasonably available other ways [than freedom of choice], such for illustration as zoning, promising speedier and more effective conversion to a unitary, nonracial school system, freedom of choice must be held unacceptable". In short, if a choice must be made between two courses of action, a school board should choose the alternative that promises the speedier and more effective conversion of the school district to a unitary, nonracial system. See also Raney v. Board of Education of Gould School District, 1968, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727, a companion case to *Green*.

attracts white parents to the neighborhood and a Negro school attracts some Negro parents to the neighborhood. Segregated schools and segregated residential patterns, therefore, are interacting agents which tend to accentuate the racial polarity that complicates and makes more difficult the Board's affirmative duty to erase all vestiges of the dual system. I would instruct the district court to require the Board to submit promptly a realistic plan for undoing the adverse effects of the construction program. The Board should come forward now with proposals, such as the consolidation and pairing of schools, that will tend to counteract continued segregation (or token desegregation) brought about or aggravated by improper location of school sites.