Lawrence HALL et al.

v.

ST. HELENA PARISH SCHOOL BOARD et al.

James WILLIAMS, Jr., et al.

v.

IBERVILLE PARISH SCHOOL BOARD et al.

Yvonne Marie BOYD et al.

v.

POINTE COUPEE PARISH SCHOOL BOARD et al.

Terry Lynn DUNN et al.

v.

LIVINGSTON PARISH SCHOOL BOARD et al.

Donald Jerome THOMAS et al.

v.

WEST BATON ROUGE PARISH SCHOOL BOARD et al.

Robert CARTER et al.

v.

WEST FELICIANA PARISH SCHOOL BOARD et al.

Sharon Lynne GEORGE et al.

v.

C. Walter DAVIS, President, East Feliciana Parish School Board, et al.

Welton J. CHARLES, Jr., et al.

v.

ASCENSION PARISH SCHOOL BOARD BOARD et al.

Civ. A. Nos. 1068, 2921, 3164, 3197, 3208, 3248, 3253, 3257.

United States District Court
E. D. Louisiana,
Baton Rouge Division.
July 11, 1969.

WEST, Chief Judge.

## ORDER

On June 9, 1969, pursuant to the mandate of the United States Court of Appeals for the Fifth Circuit dated May 28, 1969, this Court entered an order herein, 303 F.Supp. 1231, which provided in part that:

"* * * each defendant school board shall, *within thirty (30) days of the date of this order,* develop, in conjunction and cooperation with the experts of such office (HEW) and submit to this Court a new plan of operation for each school system involved herein, to become effective with the commencement of the 1969–70 school year, which said plan shall insure the operation of each school system on a unitary, non-discriminatory basis, and shall meet the standards required by the holdings in the case of Green v. County School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716; Raney v. Board of Education, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727; and the holding of the United States Fifth Circuit Court of Appeals as enunciated by them on May 28, 1969, in the decision in which the mandate to issue this order is contained giving due consideration to the practical and administrative problems of each defendant board."

The order further provided:

"If in any instance an agreed plan is not forthcoming pursuant to this order, the defendant board or boards shall file its recommended plan, and plaintiffs may also file a recommended plan, all within the thirty (30) day period commencing with the date of this order, after which this Court will, with or without a hearing, proceed to enter its decree or to enter such other order or orders as it may deem necessary."

The thirty (30) day period provided for in this order has elapsed, and the Court has now been furnished with a set of eight proposed plans, one for each parish school system, prepared and filed by HEW, and another completely independent set of eight proposed plans, one for each parish school system, prepared and filed independently by each of the respective school boards involved. No plans for any of the school systems involved have been filed independently by any of the various plaintiffs, and, the thirty (30) days allowed them to file such plans having expired, the Court will consider the HEW plans as having been filed on behalf of the plaintiffs in each of the various suits.

A review of the plans filed indicates little or no evidence that any of the plans presented by the school boards were prepared "in conjunction and co-

operation" with the experts attached to the Office of Education, United States Department of Health, Education and Welfare, as required by this Court's order of June 9, 1969. By the same token, there is little or no evidence that the drafters of the HEW plans sought in any way the cooperation and advice of the defendant school boards insofar as the actual preparation of their proposed plans were concerned. A further study of the various plans filed by the school boards reveals that the school boards have adamantly adhered to their determination to continue freedom of choice as their plan of operation, and show no evidence of any change in plan to conform, as nearly as feasible, to the mandate of the United States Court of Appeals, Fifth Circuit which mandate requires that the freedom of choice plans presently used in these various school districts be abandoned and a new plan substituted therefor which will meet the standards of Green v. County School Board of New Kent County, supra, and Raney v. Board of Education, supra, and the pronouncements of that Court contained in said mandate, a copy of which has been furnished to all of the defendant school boards here involved.

On the other hand, a study of the HEW plans filed shows in each instance complete, total departure from every vestige of freedom of choice. Hence, the plans filed by HEW and the school boards are poles apart in their approach to desegregation of the school systems involved.

It was the hope of this Court, when it issued its order of June 9, 1969, that there would be a sincere effort on the part of both HEW and the school boards to cooperate with each other in an effort to solve their mutual problems and to come up with a plan that is both workable and mutually acceptable. Unfortunately, this hoped for result has not yet been obtained. But while the problem has not been solved as hoped for, we are, nevertheless, a step closer to a solution. New plans for each school district here involved must be adopted and implemented, and these new plans must comply with the law as set forth in the May 28, 1969 mandate of the Fifth Circuit Court of Appeals. Neither this Court nor the school boards involved have any alternative but to comply, as nearly as possible, with that mandate.

There are certain self-evident facts which have emerged from this protracted school litigation that must be considered and should be kept in mind while trying to formulate new desegregation plans. First, as long as the mandate of the Fifth Circuit Court of Appeals remains unchanged by it or by higher authority, the freedom of choice plans under which the defendant school boards are presently operating are no longer acceptable. Second, either the school boards will discharge their duty to operate their school systems *in accordance with prevailing law,* whether they like the law or not, or someone else, probably HEW or some other governmental agency, will, in effect, end up running the schools for them. Third, the proposed new plans heretofore filed by each of the defendant school boards are not new at all but merely reiterate their intention to continue operating their schools under the same freedom of choice plans which have been rejected by the Court of Appeals. Fourth, the proposed plans submitted by HEW reject completely freedom of choice and substitute therefor a system of student assignment based primarily on pairing of schools in each district, with some consideration being given, in some instances, to geographic assignment of students to certain schools. And fifth, in the final analysis, it is neither the responsibility of HEW nor the responsibility of the Courts to formulate plans for the operation of public school systems. This job falls clearly within the responsibilities and duties of the school boards who, after all, are presumed to possess the expertise necessary to run their own schools within the framework of the law as it is declared by the Courts to be.

With these self-evident facts before us, it now remains for us to once again lay down guidelines for the ultimate formulation of desegregation plans under which the defendant school boards will operate commencing with the school year beginning in the fall of 1969.

Therefore, it is ordered that each of the respondent school boards prepare, either with or without the advice and assistance of HEW, and present to this Court within ten (10) days from the date hereof, a new proposed plan of operation for their public school systems, to become effective with the commencement of the 1969–1970 school year, which said plan shall insure the operation of each school system on a unitary, non-discriminatory basis, and which said plan shall meet the standards enunciated by the Fifth Circuit Court of Appeals as hereinbefore referred to. Since the proposed plans submitted to this Court by HEW do, in fact, eliminate all vestiges of racially identifiable schools in each of the school districts involved,

It is further ordered that in formulating and preparing new plans, in accordance herewith, the school boards shall apply the following procedures and guidelines:

1. If the school board cannot voluntarily accept the entire plan proposed by HEW for its school system, it shall submit to this Court, within the time herein provided for, together with its proposed new plan, a list of the HEW proposals which it can and does accept, and a list of each HEW proposal which it cannot accept. Those proposals which it can accept shall be included in the board's proposed new plan. As to each HEW proposal which it cannot accept, the board shall state specifically and concisely why it cannot accept each rejected proposal. Each and every proposal made by HEW in its submitted plan shall be either specifically accepted or rejected separately by the board, and explicit reasons shall be given for each rejection. In order for the rejections of any of the HEW proposals to be considered by the Court, the reason for such rejection must, in good faith, be clearly stated and must be based upon such things as sound educational principles, location of physical facilities, unusual administrative problems, or financial consideration. No reason for rejection shall be considered valid if it is based upon such things as personal dislike for the state of the law, prospect of students abandoning the public school system, personal objections to integrated schools, etc.

2. The plan must present substantial and immediate progress toward the complete elimination of every all white school and every all negro school within the system, and if any such schools are to remain after the implementation of the proposed new plan, the burden is upon the board to justify their existence. Such justification shall not be based upon anyone's opposition to integrated schools nor on anyone's dislike for the present state of the law. Every reasonable effort must be made to eliminate all racially identifiable schools by the commencement of the 1969–70 school year. This may be accomplished by pairing of schools, geographic assignment of students, and/or closing of certain schools and assigning students who previously attended those schools to other schools, or by combinations of these techniques, or by such other means as the school boards may deem advisable. Any plan which does not promise substantial progress toward the immediate elimination of all white schools and all negro schools within the system will be unacceptable. If for some valid reason the board deems it not feasible to require white students to attend formerly all negro schools, consideration must be given to the closing of the all negro schools and reassigning those students to other schools.

3. Faculty and staff assignments for the school year commencing in the

fall of 1969 must be made in such a manner that as far as feasible the racial composition of the faculty and staff will not indicate or suggest that the school is intended primarily for white or primarily for negro students. Any plan, to be acceptable, must provide for the assignment of faculty and staff to the schools in the system in such a manner as to comply with this provision.

4. Transportation of students must be arranged on a completely non-racial, non-discriminatory basis, and the transportation program should be reviewed and revised if necessary with a view to reducing, as much as possible, the distances which students are transported to school. Pairing of schools and/or geographic assignment of students may also be found useful in this connection.

5. The boards shall submit, along with their proposed plans, a list containing the name of each school in their system, the present racial make-up of the faculty and student body of each school, and the expected racial makeup of the faculty and student body of each school after the implementation of their proposed new plan.
6. Since the proposed plans filed by HEW do, in fact, accomplish, in each instance, the result apparently anticipated by the Fifth Circuit Court of Appeals insofar as the elimination of racially distinguishable schools is concerned, this Court will assume, in the event a defendant school board fails to file a new proposed plan in accordance herewith and within the time herein allowed, or in the event a new plan is timely filed which does not realistically promise to accomplish substantially what is sought by this order and by the mandate issued on May 28, 1969 by the Fifth Circuit Court of Appeals to be accomplished, that said school board acquiesces in the implementation of the HEW plan proposed for its school system and will, accordingly, order the immediate implementation of the HEW plan pro-

posed for that particular school system.

Since time is of the essence herein, no continuances or extensions of time will be granted herein, and

It is further ordered that copies of this order be immediately served, in accordance with law, upon the attorneys of record for each of the defendant school boards here involved.