**UNITED STATES of America,
Plaintiff,**

**v.**

**TATUM INDEPENDENT SCHOOL
DISTRICT et al., Defendants.**

**Civ. A. No. 5044.**

United States District Court
E. D. Texas,
Tyler Division.

Sept. 13, 1969.

Richard Brooks Hardee, U. S. Atty., Tyler, Tex., Jarris Leonard, Asst. Atty. Gen., David Vanderhoff, Bernard Shapiro, Attys., Dept. of Justice, Washington, D. C., for plaintiff.

Gordon R. Wellborn, Henderson, Tex., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JUSTICE, District Judge.

### FINDINGS OF FACT

1. The Tatum Independent School District is a school district created and existing under the laws of the State of Texas.

2. The Board of Trustees of Tatum Independent School District is an agency of the State of Texas, and is responsible under Texas law for the operation of the school system.

3. The Tatum Independent School District is comprised of two school facilities, the Tatum campus and the Mayflower campus. During the 1968–1969 school year, 352 white students and 321 black students attended these campuses, and were instructed by an instructional staff of 22½ white teachers and 14 black teachers.

4. Prior to 1955, Texas law required separate schools for black and white students.

5. On April 15, 1966, the Board of Trustees, Tatum Independent School District executed and submitted to the Department of Health, Education and Welfare an assurance of compliance, HEW Form 441–B together with a freedom-of-choice desegregation plan. The assurance of compliance was approved by the Department and the school district was notified by letter dated August 11, 1966.

6. The assurance of compliance was submitted in consideration of and for the purpose of obtaining federal financial assistance. The Tatum Independent School District is and at all material times has been receiving federal financial assistance.

7. During the 1965–66 and 1966–67 school years no black student attended the Tatum campus and no white student attended the Mayflower campus. Only black teachers were assigned to the Mayflower campus and only white teachers were assigned to the Tatum campus.

8. During the 1967–68 school year the Board of Trustees operated the school system under a freedom of choice plan for grades 1 through 8, and all students in grades 9 through 12 were instructed on the Tatum campus. During that school year no white student attended the Mayflower campus and only 9 black students attended the Tatum campus in grades 1 through 8. Students at these

schools were instructed by the following faculties:

|                   | WHITE | BLACK |
|-------------------|-------|-------|
| Tatum Campus      | 14.9  | 7.7   |
| Mayflower Campus  | 1.9   | 14.9  |

9. During the 1968–69 school year the Board of Trustees operated the school system under a freedom of choice plan for grades 1 through 6. All students in grades 7 through 12 were instructed on the Tatum campus. During that school year no white student attended the Mayflower campus and 19 black students attended the Tatum campus in grades 1 through 6. Students at these schools were instructed by the following faculties:

|                   | WHITE | BLACK |
|-------------------|-------|-------|
| Tatum Campus      | 19¾   | 4¾    |
| Mayflower Campus  | 2¾    | 8¾    |

10. By resolution of December 10, 1968, the Board of Trustees adopted a school desegregation plan, which provided that commencing with the 1969–1970 school year, all students in the school district would be instructed at the Tatum campus. The plan was submitted to the Department of Health, Education and Welfare, by a letter dated December 11, 1968.

11. On December 30, 1968, the Department of Health, Education and Welfare accepted the December 10, 1968, plan of desegregation and notified the Board of Trustees of their acceptance by mailing a letter to the Superintendent, Rex N. White.

12. On July 20, 1969, the Board of Trustees amended the December 10, 1968, plan of desegregation and submitted an amended plan whereby students in grades 1–5 would be assigned to the Tatum and Mayflower schools on the basis of freedom of choice. The Department of Health, Education and Welfare was informed of this amended plan by letter.

13. On August 4, 1969, the Department of Health, Education and Welfare informed Superintendent Rex N. White by letter that the amended desegregation plan was unacceptable and requested that an alternate plan be submitted.

14. On August 12, 1969, the Board of Trustees reiterated its proposed plan of July 20, 1969, whereby students in grades 1 through 5 would be assigned by freedom of choice.

15. On August 20, 1969, the Department of Health, Education and Welfare by a letter to Superintendent Rex N. White, again notified the school district that their plan of desegregation was unacceptable.

16. On September 2, 1969, school opened pursuant to a freedom of choice plan for grades 1 through 5. All students in grades 6 through 12 are being instructed at the Tatum campus. Pursuant to the freedom of choice plan 35 black students in grades 1 through 5 attend the Tatum campus.

17. On September 2, 1969, some black students in grades 1 through 5 who had chosen the Tatum school were denied admission to the Tatum campus, and transported by school bus to the Mayflower campus.

18. No white students in grades 1 through 5 were denied admission to the school of their choice. Some of the black students in grades 1 through 5, who were denied admission to the Tatum campus, reside closer to the Tatum campus. Some white students who attend the Tatum campus reside closer to the Mayflower campus.

19. For the 1969–70 school year no white students in grades 1 through 5 chose to attend the Mayflower campus.

20. On September 8, 1969, the Department of Health, Education and Welfare, by telegram, informed the Tatum Independent School District of its failure to comply with the provisions of Title VI of the Civil Rights Act of 1964 and that compliance had not been secured by voluntary means.

21. The Board of Trustees operates a transportation system which completely covers the district and transports in excess of 70 percent of the school district's students. Some of the buses make stops at both schools, while other buses travel directly past the Mayflower campus to

the Tatum campus without stopping at Mayflowers.

22. The Tatum Elementary facility was constructed in 1958 and is currently at capacity. The Mayflower facility was constructed in 1957 and has in excess of 15 classrooms. It is currently attended by 83 black students and has several vacant classrooms.

23. The Board of Trustees has failed to implement the December 10, 1968, plan of desegregation entered into with the Department of Health, Education and Welfare and has failed, prior to the date of hearing, to adopt or implement a reasonable alternative which would completely eliminate the dual school system.

24. Freedom-of-choice as a method of desegregation has not eliminated the dual school system in the Tatum Independent School District.

25. On September 12, 1969, prior to hearing, the defendants submitted a plan of desegregation which provided that all students would be instructed on the Tatum campus by Monday, September 15, 1969.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this action under 28 U.S.C. § 1345 and 42 U.S.C. § 2000d.

■ 2. The United States is authorized to bring this action under Title VI of the Civil Rights Act of 1964, and its implementing regulations, 45 C.F.R. 80.8 (a) (1969 rev.).

■ 3. Apart from specific statutory authorization, the United States has standing to enforce the terms and conditions upon which its money allotments are made. King v. Smith, 392 U. S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); United States by Clark v. Frazer, 297 F.Supp. 319 (M.D.Ala.1968).

■ 4. Title VI of the Civil Rights Act of 1964 imposes on school districts an obligation to insure the guarantee of the Fourteenth Amendment as enunciated by the Supreme Court in Green v. County School Board, etc., 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968) and its companion cases Raney v. Board of Education of Gould School District, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727 (1968) and Monroe v. Board of Commissioners of City of Jackson, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968), Taylor v. Cohen, 405 F.2d 277 (4th Cir. 1968).

■ 5. School boards which, in the past, have operated a state compelled dual system are "charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated *root* and *branch*", Green v. County School Board, etc., 391 U.S. 437–438, 88 S.Ct. 1694.

■ 6. A freedom-of-choice plan which delays rather than advances conversion to a "unitary nonracial, nondiscriminatory school system * * * must be held unacceptable." Monroe v. Board of Commissioners of City of Jackson, 391 U.S. 450, 459, 88 S.Ct. 1705 (1968).

■ 7. The desegregation plan submitted by the Tatum Independent School District on December 10, 1968, and accepted by the Department of Health, Education and Welfare was a valid and lawful plan, which met the requirements of Title VI and the Fourteenth Amendment, and the School District's failure to implement this plan or any reasonable alternative plans and its continued use of freedom-of-choice in grades 1 through 5 constitutes a violation of its obligation under Title VI and its assurance of compliance.

8. The plan of school desegregation submitted by the defendants prior to hearing, will establish a unitary school system and should be approved.

■ 9. The United States is entitled to injunctive relief.