Doris Elaine BROWN and Delores Eloise Brown by Sam Brown, their father and next friend; Frazier McKinley Glover, Plaintiffs-Appellees,

United States of America,
Plaintiff-Intervenor,
Appellee,

Tony S. Cooper, on behalf of himself and others similarly situated, Plaintiff.

v.

THE BOARD OF EDUCATION OF the CITY OF BESSEMER; J. Howard McEniry, President of City Board of Education of Bessemer, Ala.; Dr. James O. Knuckles, Superintendent of Education of the City of Bessemer, Ala.; and Joe Terry, Charles A. Long, Jr., Rob Millsap, Jack Wischmyer, Edna Morton, and Richard Patterson, as members of the City of Bessemer Board of Education and their successors in office, Defendants,

Jefferson County Board of Education and members Mrs. Mary Buckelew, Mr. Jim Hicks, Mrs. Robert W. Gwin, Jr., Bill Mewbourne, Dr. Kevin Walsh, Defendants-Appellants.

No. 86–7579.

United States Court of Appeals,
Eleventh Circuit.

Feb. 2, 1987.

Carl E. Johnson, Bishop, Colvin & Johnson, Frank Nelson Building, Birmingham, Ala., for defendants-appellants.

Joe L. Tucker, Jr., Holliman & Tucker, Bessemer, Ala., for plaintiffs-appellees.

William R. Yeomans, U.S. Dept. of Justice/Civil Rights Div., Appellate Section, Washington, D.C., for U.S.A.

Before RONEY, Chief Judge, EDMONDSON, Circuit Judge, TUTTLE, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

The Board of Education of Jefferson County, Alabama appeals an order by the United States District Court for the Northern District of Alabama granting extraordinary relief to the Board of Education of the City of Bessemer, Alabama. Because we find that the district court acted within its authority, we affirm.

## FACTS

The City of Bessemer, Alabama ("Bessemer") lies within the limits of Jefferson County, Alabama. For several decades, Bessemer has operated a school system separate from that operated by the county. Since 1971, each system has operated under a continuing order of the United States District Court for the Northern District of Alabama to desegregate and to provide a unitary system of education to its own students. *See, Brown v. Board of Education of the City of Bessemer, et al.,* No. CV–65–HM–0366–S (N.D.Ala. August 30, 1971), *rev'd in part,* 464 F.2d 382 (5th Cir.1972); *Stout v. Jefferson County Board of Education,* No. CV–65–P–0396–S (N.D.Ala. September 8, 1971). Neither system has yet been declared unitary. It is in connection with the district court's supervision of the Bessemer school system that this appeal arises.

On July 3, 1985, the Bessemer Board of Education filed a "Petition for Approval of Unitary Plan." The goal of the plan was to consolidate as many all-black schools as possible with racially desegregated schools. The district court "preliminarily approved" the plan on July 12, 1985.

The consolidation outlined by the Bessemer plan would require extensive construction at the desegregated schools to accommodate the students from the other schools. Because a key provision of the plan involved closing the all-black Abrams High School and transferring students from that school to the desegregated Lanier High School, Bessemer was eligible for a consolidation grant from the State of Alabama in the amount of approximately $800,000.00. Pursuant to the conditions of the grant, the Bessemer Board of Education committed itself to raise a matching amount, leaving 1.6 million dollars available to implement the unitary education plan.

In early 1986, annexation elections were held concerning Bessemer pursuant to a consent decree issued in another, otherwise unrelated lawsuit *Tolbert, et al. v. City of Bessemer, et al.,* Nos. CV–83–P–3050–S, CV–84–P–0893–S. Plaintiffs in *Tolbert* charged that Bessemer had for many years pursued a policy of actively seeking to annex geographic areas populated by white persons while refusing to annex areas populated by black persons. The parties to the suit eventually entered into an agreement to hold annexation elections in three areas, designated Parcels A, B, and C, adjacent to the city limits of Bessemer. In Alabama, city school districts ordinarily expand with annexations to the pertinent city. Ala. Code secs. 16–8–20; 16–11–9 (1977). In February and March, 1986, elections were

held in Parcels A and B, respectively. As a result of those elections, approximately 900 children became eligible to attend Bessemer city schools—200 from Parcel A and 700 from Parcel B.

After the annexation elections, the Jefferson County Board of Education notified the Bessemer Board of Education that Jefferson County would no longer educate the students residing within the annexed areas. Concerned that the influx of 900 students into the Bessemer school system would affect the court-approved unitary plan, Bessemer on April 24, 1986 filed motions to add the Jefferson County Board of Education and its individual members as parties defendants in the case of *Brown v. Bd. of Education, supra.* Bessemer also moved for extraordinary relief against the added defendants, requesting an order instructing Jefferson County to continue to educate the students in the annexed parcel. The motions were referred to a United States Magistrate for an evidentiary hearing and recommendation.

At the hearing, Bessemer presented testimony that it would be able to accommodate the 200 additional students from Parcel A without undue strain to its facilities. The influx of the 700 students from Parcel B, however, would prevent Bessemer from operating a unitary system under the plan approved by the court. In the first place, the current racial composition of Bessemer schools is 73% black students and 27% white students. With the inclusion of the students from Parcel B, 94% of whom are black, the percentages would shift to 79% black students and 21% white students. In Jefferson County, 83% of the current students are white and 17% are black. With the transfer of the students from Parcel B, the percentage of black students would be reduced to 16%, but in some individual schools the population of black students would drop from 28% to 22%.

Even more significant than the statistics is the practical impact that the students from Parcel B would have on Bessemer's attempts to desegregate its school system. According to the record, Bessemer would not be able to accommodate those students without keeping Abrams High School open, contrary to the court-approved desegregation plan. Moreover, if Abrams continued to operate, Bessemer would lose its consolidation grant from the State of Alabama. Without that grant, and with the added expense of renovating and maintaining Abrams High School, Bessemer would be unable to construct additional facilities at its desegregated schools and its progress toward a unitary system would be severely impeded, if not completely stalled. If, however, Jefferson County retained the students from Parcel B, Bessemer would be able to close Abrams High School and, with construction funded by the consolidation grant, would be able to accommodate the students from Parcel B in desegregated schools within two to four years.

The magistrate entered an extensive order recommending that Bessemer be required to educate all of the students from the annexed parcels. The appellees filed objections to the magistrate's order, and the district court subsequently accepted some of the magistrate's recommendations and rejected others. The district court eventually directed Bessemer to accept the responsibility for educating the students residing in Parcel A but required Jefferson County to retain all responsibility for those students residing in Parcel B. Jefferson County appeals that order.

## PROPRIETY OF RELIEF

Jefferson County argues that the district court erred in granting interdistrict relief because there was no evidence of an interdistrict violation by Jefferson requiring an interdistrict remedy. *See Milliken v. Bradley,* 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974). We do not reach that question because the relief ordered was not interdistrict relief.

This case is not one in which the district court consolidated separate school districts. *See Little Rock School District v. Pulaski County Special School District No. 1,* 778 F.2d 404 (8th Cir.1985). Nor is it a case in which the district court ordered indepen-

dent school districts to participate in a single desegregation plan. *See Milliken v. Bradley*, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974); *Lee v. Lee County Board of Education*, 639 F.2d 1243 (5th Cir.1981).[1] Long-existing school district boundaries are not being altered or ignored by court order.

This case is about intradistrict school desegregation. The district court intruded very little on the authority of the respective school boards. The court's relief was prospective in its character and simply postponed the school-related effects of the annexation. To protect the desegregation process in Bessemer, such an order—maintaining the status quo in respect to school district boundaries—was within the court's equitable power.

■ In another, more famous *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), the Supreme Court declared that the doctrine of "separate but equal" educational facilities is constitutionally unacceptable. Since that decision, the Supreme Court has affirmed the obligation of school officials "to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch." *Raney v. Board of Education*, 391 U.S. 443, 446, 88 S.Ct. 1697, 1698, 20 L.Ed.2d 727 (1968). Furthermore, when school officials do not act according to that obligation, federal courts have the equitable power to fashion remedies for constitutional violations. *Swann v. Charlotte-Mecklenburg Bd. of Education*, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).

■ A prerequisite to the exercise of that equitable power is a finding of a constitutional violation. When, as here, a school system has in the past operated a segregated system, a district court's remedy need not be founded on an independent constitutional violation. *Washington v. Davis*, 426 U.S. 229, 244, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976); *Wright v.*

*Council of City of Emporia*, 407 U.S. 451, 459, 92 S.Ct. 2196, 2202, 33 L.Ed.2d 51 (1972). Each action of the school system, though not unconstitutional in itself or prompted by discriminatory motives, may be examined by a district court and set aside if it interferes with efforts to desegregate the system. *Wright* at 462, 92 S.Ct. at 2203.

In *Wright v. Council of City of Emporia*, 407 U.S. 451, 92 S.Ct. 2196, 33 L.Ed.2d 51 (1972), the district court entered an order preventing a city from creating its own school district separate from the county system. The court predicated its order on a finding that the creation of a city school system would deprive the students of the county system of an integrated education. *Id.* at 463–64, 92 S.Ct. at 2203–04. Even though the City of Emporia was acting within its rights under a valid state law and the injunction against the city affected the county school system by preserving the status quo, the Supreme Court approved the order prohibiting a change in the school district boundaries.

■ Similarly, in the instant case, the district court is preventing a change in school district boundaries that would have a substantially segregative impact on the Bessemer school system—a school system that has been operating under a desegregation order for 15 years and that has not yet eradicated the effects of past discrimination. Although Bessemer held the annexation elections in an effort to remedy past discrimination in annexations, those elections will have the effect of derailing current efforts to desegregate the city school system. Without this impermanent injunction, the racial composition of the school district would change drastically; and, more importantly, Bessemer would be presently unable to accommodate its students in desegregated schools. In these circumstances, an injunction postponing the school-related effects of the annexation

---

1. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), this court adopted as precedent all decisions of the former Fifth Cir-

cuit Court of Appeals decided prior to October 1, 1981.

was within the powers of a district court that was already supervising the desegregation efforts in the affected school district.

We realize that the district court's order also affects the Jefferson County school system. That fact alone, however, does not make the injunction an interdistrict remedy. The district court is not placing a burden on Jefferson County of the kind disapproved in *Milliken* and the other interdistrict cases cited above. In fact, the district court is placing no new or additional burden on Jefferson County. The injunction bars the annexation for all school purposes. Students in Parcel B will simply remain in the county schools that they now attend. Because the county school district will receive the revenues allocated for educating these students, there are no economic consequences to the county school district as a result of this injunction. Rather than ignoring or setting aside school district boundaries, the district court's order, as did the order in *Wright*, merely prevents for the moment a change in current boundaries.[2] After reviewing the record, we hold that the district court was justified in concluding and finding that the immediate influx of 700 students from Parcel B into the Bessemer school system will significantly hamper that system's efforts to desegregate until the necessary physical facilities can be constructed to receive these new students. *See generally Wright* at 460, 92 S.Ct. at 2202.

The district court's order is a stopgap measure. The record indicates that with the school consolidation grant, Bessemer should be able to accommodate in the future all students from the pertinent annexed areas. Because the injunction is a stopgap, Bessemer's Board of Education doubtlessly understands that it has a duty to move speedily to accommodate all students residing within the City's borders in the City's own schools.

For the above reasons, the order of the district court is AFFIRMED.

---

**2.** In this respect, this case is significantly different from *Lee v. Lee County Bd. of Education,* 639 F.2d 1243 (5th Cir. Mar. 19, 1981), where the court refused to consider invalidating the school-related effects of property annexations. The annexations in *Lee* involved piecemeal acquisition of small amounts of territory and had already been in effect for several years. *Id.* at

1264 n. 15. Furthermore, no plaintiff had requested the district court to invalidate the annexations insofar as they altered school district boundaries, *id.* at 1263 n. 14, and there was no evidence from which the court could determine the segregative effect of the annexations. *Id.* at 1267.