**UNITED STATES of America,
Appellant,**

v.

**BOARD OF PUBLIC INSTRUCTION OF
POLK COUNTY, FLORIDA, Appellee.**

**No. 25768.**

United States Court of Appeals
Fifth Circuit.
April 18, 1968.

Frank M. Dunbaugh, Atty., Dept. of Justice, Washington, D. C., Stephen J. Pollak, Asst. Atty. Gen., Edward F. Boardman, U. S. Atty., John S. Hedland, Richard G. McBroom, Attorneys, Department of Justice, Washington, D. C., for appellant.

Clarence Boswell, Bartow, Fla., for appellee.

Before TUTTLE and GOLDBERG, Circuit Judges, and HOOPER, District Judge.

TUTTLE, Circuit Judge:

This is an appeal by the United States, an intervenor in a school desegregation suit originally filed by Negro residents of Polk County, from a denial by the district court of an injunction against the building of a new grammar school allegedly in violation of the "new construction" provisions of the Jefferson County requirements of this court. See United States et al. v. Jefferson County Board of Education, 5 Cir., 380 F.2d 385.

The United States moved the district court to enjoin the defendant Board of Public Instruction from constructing an elementary school which it proposed to build in a Negro neighborhood on the northern edge of Lakeland, Florida. The trial court entered a temporary restraining order pending a hearing on the motion on February 5th. On February 7th the district court denied the motion of the United States, without opinion, and dissolved the temporary restraining order. The United States having filed its notice of appeal, this court granted

an injunction pending appeal and expedited a hearing of the case on the merits.

At the request of the appellee, the Florida State Department of Education, in December, 1965, conducted a survey of the Polk County School system. This survey was made on the basis of the location of students and the schools needed to serve the students in a particular location. It paid no attention to the color or race of any students, but just dealt with school populations in relation to existing schools, in order to permit recommendations for elimination, or addition, of schools. Prior to the fall term of schools in 1965, all of the children of Lakeland, Florida, attended school by race, there being a dual system with children from the same neighborhood going to the nearest school of their own race.

As a result of this survey a number of suggestions were made for the county schools, including several with respect to schools in the Negro neighborhood at the northern edge of Lakeland, with which we are here concerned. One of these recommendations was to abandon the Rochelle Elementary School and to construct a new elementary school (referred to in the survey report as "new Elementary School F") in the same vicinity to replace it. At the time of the survey, and continuing until today, attendance at the existing Rochelle Elementary School is limited to Negro students. In the latter part of 1966, the appellee enlisted the assistance of the Lakeland Planning Commission in locating a specific site for the proposed elementary school. In December, 1966, approval of the specific site was obtained from the State Department of Education. In January, 1967, the School Board acquired the land at the site selected for the proposed school. An architect drew up plans, and bids for the construction of the new school were solicited. The bids were received and on January 31, 1968, the contract was to be awarded. Such action was enjoined

by the district court's temporary restraining order, later dissolved. The question presented to us is the correctness of the judgment of the trial court dissolving the restraining order and denying an injunction against this new construction.

Since the appellants are entitled to relief here only if they fit within the pattern of the Jefferson decision, it must first be noted that there can be no question but that all school children of Polk County were, until the 1965–66 school year, attending school under a dual system based on race, and until the action of the district court on May 15, 1967, ordering the defendants to adopt and implement a Jefferson County-type desegregation plan, appellee was still operating a dual system as to many of the grades of the Lakeland schools. The plan presently in effect requires the expression of a choice by each student for each school year and requires the school board to assign the students to the schools they choose, subject only to capacity and nearness of residence where capacities are exceeded.

The school population of Polk County, according to the report acted upon by the Board here, is 39,000 white and 11,000 Negro. Significant Negro attendance has now been achieved in some of the "white" schools since there are now 2,361 Negro students attending schools which had formerly been designated for white students. A substantial part of this has been achieved by the combining of high schools completely in some of the smaller communities in the county. Nevertheless, the record clearly shows that the proposed school, "New Elementary School F," is being built at a site and as a successor and substitute school for a grammar school that has heretofore been attended solely by Negro children. It is in a heavily predominant Negro neighborhood and, although the superintendent of Public Instruction testified at the trial that it was planned that the new school, if built at this location, would have an integrated faculty

upon opening, it is conceded that all parties expect the new school to be "predominantly Negro."

The record here discloses what the courts have previously commented on, that is that it is rare, almost to the point of nonexistent, that a white child, under a freedom of choice plan, elects to attend a "predominantly Negro" school. As this court said in the first Jefferson case:

"In this circuit white students rarely choose to attend schools identified as Negro schools. * * * New construction and improvements to the Negro school plant attract no white students and diminish Negro motivation to ask for transfer." 5 Cir., 372 F.2d 836, 889.

It was testified here by the school superintendent that no white student in Lakeland had chosen to attend a predominantly Negro school. This same situation was discussed recently by the District Court for the Middle District of Georgia in Bivins et al. v. Board of Public Education and Orphanage for Bibb County et al., 284 F.Supp. 888:

"The evidence shows that thus far no white student has chosen to attend a predominantly Negro school. The evidence, therefore, requires a finding that if this proposed school was constructed according to the present purposes and plans it would be constructed as a Negro school; it would in fact be a Negro school; it would in fact be attended solely by Negro students, except for the possibility of a white student's failure to exercise his compulsory freedom of choice, and as a result of such failure being assigned to this school."

We conclude that the record here can be read in no other manner than to require the conclusion that this proposed school would in fact represent a continuation of the Rochelle Negro elementary school.

The clause of the outstanding court decree affecting new construction of schools in Polk County conforms to that required by this court in the Jefferson County case:

"The defendants, to the extent consistent with the proper operation of the school system as a whole, shall locate any new school and substantially expand any existing school with the objective of eradicating the vestiges of the dual system."

 The appellee contends that inasmuch as the planning for the school was made without reference to race, there was no conscious effort on the part of the Board to perpetuate the dual system. This does not meet the requirements of the court order. There is an affirmative duty, overriding all other considerations with respect to the locating of new schools, except where inconsistent with "proper operation of the school system as a whole" to *seek* means to eradicate the vestiges of the dual system. It is *necessary* to give consideration to the race of the students. It is clear from this record that neither the state board nor the appellee sought to carry out this affirmative obligation, before proceeding with the construction of this already planned school.[1]

 The appellant here does not seek a permanent injunction against the building of this school at this location. The United States contends that the school cannot be built at this location until the factors relating to possible steps assisting in eradicating the former dual system are evaluated by the Board having that responsibility. This has not

---

1. The Polk County Superintendent of Schools testified as follows:

"Q. What I am getting at is, after the court order was entered against you, did you reevaluate the location of that school as to its impact upon the elimination of the dual system?

A. Not officially.

Q. Did you unofficially?

A. Unofficially we reevaluate every school every day in the planning stage.

Q. Did you take any action to determine whether that school would help to eliminate the dual system?

A. No."

been done. The conclusory expression of opinion by the superintendent of schools that in his judgment the location of this school, long since planned, without reference to the requirements of Jefferson, would meet those requirements, cannot substitute for the absence of a planning study and analysis made in such manner as to be subject to review by the district court that is required under the Jefferson ruling.

 Apparently, from this record, it is the custom of the Polk County Board of Education to transport students to accommodate their choice of schools. Thus, it is immediately apparent that a careful analysis of the means by which the dual system could be eradicated might well result in a decision to place new construction in such a manner as would permit a diffusion of the Negro students from the area of greatest concentration to grade schools, all of which would be located outside of such racially identifiable neighborhood. In any event, it is the duty of the Board to make this study and analysis before the expenditure of school funds which will fix the pattern for years to come.

 The decision as to what is possible without adversely affecting the proper operation of the school system as a whole must be made by the Board. It should be made in such manner as would permit the district court's review of the conclusion reached in order to determine whether the requirements of the decree have been fully understood and carried out. In this connection we cite with approval the standard applied by the three-judge district court in Lee v. Macon County Board of Education, M.D.Ala., 267 F.Supp. 458, at 481, where it was stated that sites for the construction or expansion of schools should not be approved "if, judged in light of the capacity of existing facilities, the residence of the students, and the alternative sites available, the construction will not, to the extent consistent with the proper operation of the school system as a whole, further the disestablishment of state enforced or encouraged public school segregation and eliminate the effects of past state enforced or encouraged racial discrimination in the State's public school system."

Here, it is plain that the appellee Board has not taken the affirmative step to locate this new school building in a manner that would assist in eliminating the vestiges of the old dual system. New construction must be delayed until this has been done.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.