Carolyn BRADLEY and Michael Bradley, infants, etc., et al.

v.

The SCHOOL BOARD OF the CITY OF RICHMOND, VIRGINIA et al.

Civ. A. No. 3353.

United States District Court, E. D. Virginia, Richmond Division.

June 20, 1970.

M. Ralph Page, James R. Olphin, Richmond, Va., Jack Greenberg, James M. Nabrit, III, Norman J. Chachkin, New York City, Louis R. Lucas, Memphis, Tenn., for plaintiffs.

Henry T. Wickham, William L. Wimbish, Conrad Mattox, Richmond, Va., for defendants.

Edward W. Hirschler, Everett G. Allen, Jr., Richmond, Va., for intervenor Bellevue-Ginter Civic Ass'n.

Fred T. Gray and Walter E. Rogers, Richmond, Va., for intervenors Austin and others.

William H. King and John S. Battle, Jr., Richmond, Va., for intervenor Westover Hills Parent-Teachers Ass'n.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiffs have moved the Court for an Injunction *pendente lite* restraining the defendant school board from proceeding with the further planning or undertaking of any new school construction during the pendency of the trial and decision on this action, and for such further time as the Court may direct.

Defendants have in open court joined the plaintiffs in requesting an expeditious ruling on said motion, although defendants and each of the intervenors object to the granting of said motion.

Accordingly, the Court heard evidence in support of defendants' objection to said motion and finds from the evidence adduced the following:

By reason of the City of Richmond's being awarded certain territory formerly owned by Chesterfield County, the city's school population was increased by a sufficient number of students to result in there being 3,000 more students than could be accommodated in the then existing schools. Under the annexation agreement, Chesterfield County is to educate the excess number of elementary students in the newly annexed area until 1971, and the high school students until 1972. It is contemplated that during the next school year Chesterfield will be educating in excess of 3,500 Richmond students, for which the city will pay tuition.

In addition, the agreements between Chesterfield and Richmond contemplate that Chesterfield will build three elementary schools for which the city will pay. It is contemplated that these schools will be ready by 1971. The land has been acquired, bids are out, and it is anticipated that they will be received for action on July 2, 1970. The locations selected for the schools were dictated by the needs of both Chesterfield and the city, and as a consequence same are located on the periphery of the city and county line. The city has already secured the sites and money has been appropriated for the buildings.

The Court finds that if and when the schools are built, it is anticipated they would have an expected use of approximately fifty years.

At the time the elementary schools in the annexed area were planned, the plans were predicated on the then existing

school systems in the respective areas— as to Richmond, freedom of choice—as to Chesterfield, an area system.

It is contemplated that under the existing population, the elementary schools will be predominantly white.

In addition, there is now planning for junior and senior high schools to be errected in the annexed area, although no site has been acquired as yet for same.

Within the old city limits it is planned that advertising for bids will be commenced on June 23, 1970, for the construction of an elementary school at Dove Street, an area which is predominantly black. It is contemplated that a contract for the construction of this school will be awarded by August 1, 1970, to the end that occupancy may be had by September 1971.

In addition, it is contemplated that there will be a new junior high school on the north side of the city to be located adjacent to the John Marshall High School, and bids are anticipated in reference to that construction by November 1970. The planning of a junior high school on a site adjacent to the present George Wythe School has now reached the stage where architectural drawings are being worked on, and it is contemplated that that construction will be commenced in sufficient time for occupancy in the fall of 1972.

On July 14, 1970, bids are anticipated for an addition to the existing Mary Scott Elementary School on the north side where, by reason of overcrowded conditions, trailers are presently in use, and it is contemplated that this addition will be finished in time for use in 1971, the contract for construction to be awarded on or about July 16, 1970.

The city also contemplates advertising for bids in March 1971 for the construction of a trade training center on the site of the present technical center.

It appears to the Court that the planning in reference to the anticipated construction insofar as the elementary schools are concerned has been on the basis that the schools would be operated primarily as schools within a particular geographic zone, i.e. reasonable walking distance for the students. As to the contemplated high schools, included in this planning was some consideration of transportation for the students.

In addition to the foregoing, certain renovations are being made in certain of the schools, which the Court does not consider to be a subject of this motion.

In short, the school board is contemplating the expenditure for renovation and construction in the reasonably near future of sums amounting to approximately twenty-five million dollars.

Defendants contend that any delay may result in a double shift of students until such time as construction is completed. This argument, it seems to the Court, loses its viability when measured against the practical result that any construction if commenced now will be commenced without a definitive Court-approved desegregation plan, and large expenditures will be made for buildings contemplated to be in use for fifty years.

The Court finds that the annexation decree entered in the Circuit Court of Chesterfield County directed, "3. The Chesterfield County School Board shall acquire sites approved by the city, by purchase or condemnation, the prices to be approved by the city, and shall undertake to build three elementary schools to city specifications and design as directed by an architect selected by the city at contract prices approved by the city, and shall turn them over to the city by September 1, 1971. 4. The city shall pay the Chesterfield County School Board its costs."

The purpose of that portion of the decree, of course, was to provide for the education of the school children in the area annexed. It should be borne in mind that that decree was entered prior to plaintiffs' motion for further relief in the instant case. We are dealing with a school system which admittedly is being operated in a manner violative of constitutional requirements.

The plaintiffs herein do not seek a permanent injunction, and it is immediately apparent that a careful analysis of the means by which the dual system might be eradicated might well result in a decision to place new construction in such a manner as would more readily lead to a unitary school system in which there are no "black" and no "white" schools. See Green v. County School Board of New Kent County, 391 U.S. 430, 439, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968).

It is apparent that the schools required to be constructed under the annexation decree cannot be constructed by Chesterfield County until the city has approved the contract prices. The suggestion by the defendants that the sites contemplated for these schools are appropriate even in view of the pending litigation cannot make up for the absence of exploration necessary in order to culminate in a plan which this Court can approve. See United States v. Board of Public Instruction of Polk County, Florida, 395 F.2d 66 (5 Cir. 1968).

■ The defendant school board, as this Court interprets the law of this Circuit as enunciated in Swann v. Charlotte-Mecklenburg Board of Education, 431 F.2d 138 (4th Cir., May 26, 1970), and Green v. School Board of City of Roanoke, 428 F.2d 811 (4th Cir., June 1970), must explore every reasonable method of desegregation, including rezoning, pairing, grouping, school consolidation, transportation, majority to minority transfer plan. In short, they must explore any and all reasonable means to dismantle the dual system and eliminate racial characteristics in the Richmond schools.

■ Any precipitious action on the part of the school board at this time may well result in perpetuation of the very conditions which have led to the instant litigation. The location of new schools and/or expanding of existing facilities must be done with the object of eradicating the instant system. It must be done in a manner to reasonably assist the desegregation of the schools. See Davis v. Board of School Commissioners of Mobile County, 393 F.2d 690, at 697 (5 Cir. 1968).

■ Therefore, it is the Court's conclusion that until such time as the Court approves a plan for the operation of the schools of the City of Richmond, all construction shall be suspended, with the exception of the renovation being conducted at Thomas Jefferson High School and Maggie Walker High School.

Upon a showing by the defendants, prior to the final approval by the Court of a school plan, that any particular project will not in fact and law have the effect of perpetuating racial segregation, leave to proceed will be granted.

An injunction in accord with this memorandum will be this day entered. Said injunction shall be effective as to the defendants, their agents, servants, employees, and all others acting in concert with said defendants.