**UNITED STATES of America,**
**Plaintiff,**
**Janet Powell Dixon, etc. and Harlem Civic Improvement Association, Intervening Plaintiffs,**

v.

**BOARD OF PUBLIC INSTRUCTION OF HENDRY COUNTY et al.,**
**Defendants.**

**No. 70–1069–Civ–CF.**

United States District Court,
S. D. Florida.
March 5, 1974.

Samuel J. Flanigan, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

James F. Garner, Fort Myers, Fla., for defendant School Bd.

W. George Allen, Fort Lauderdale, Fla., for intervening plaintiffs.

## ORDER

FULTON, Chief Judge.

This cause was considered upon the motion of defendant, Board of Public Instruction of Hendry County, for approval of a proposed facility in excess of $500. The School Board seeks Court approval for the construction of a new elementary school in Clewiston to house grades one through five. The proposed site of this new school is upon land adjacent to the present Clewiston Middle School. The intervening plaintiffs filed a response in opposition to the motion, contending that a new elementary school is not needed and that Harlem Academy should be used to alleviate the overcrowded condition in Clewiston Elementary School. In accordance with Calhoun v. Cook, 430 F.2d 1174 (5th Cir.

1970), a full hearing upon the School Board's proposed construction was conducted on February 1, 1974.

## EXISTING CLEWISTON ELEMENTARY SCHOOL

Following a survey of school plants in Hendry County conducted by the Florida Department of Education on January 29 through February 1, 1973, a report of the school survey staff recommended the construction of a new elementary school in the Clewiston area. The survey staff consisted of James Lee, Jr., Survey Director from the Florida Department of Education, Tallahassee, and seven Department of Education personnel from Dade, Broward, Palm Beach and Indian River Counties. The school survey report found that, of the five permanent buildings comprising Clewiston Elementary School, one building failed to meet State fire regulations for safety, and another building containing six classrooms was considered inadequate for instructional purposes. The cafeteria, toilet and media center facilities were found to be totally inadequate for existing pupil stations.

Although the present enrollment at Clewiston Elementary School is 1,044 students, the survey report reflects a present desirable pupil capacity of only 960 students. The enrollment of 1,044 students for the 1973–1974 school term is a 3.5 per cent increase over the previous 1972–1973 school term enrollment of 1009 students. The average yearly growth rate over the last seven years is 2.3 per cent. Thus, the projected enrollments at Clewiston Elementary School are 1068 students for the 1974–1975 school term and 1093 students for the 1975–1976 term.

Since present enrollment exceeds the desired pupil capacity by over 80 pupils, it is clear that the present Clewiston Elementary School facility is overcrowded. Two of the five buildings, the "red brick" building and the "pink stucco" building, were constructed prior to 1940. James Lee, Jr., Director of the school survey staff, testified that the class-rooms were small and in disrepair. Although some classrooms were found to be adequate, many were considered inadequate. Additionally, fire hazards existed in the "red brick" building. The School Board has established the necessity for a change in the housing of elementary school students in Clewiston in light of the inadequacies of the present facilities, the present enrollment which exceeds desired maximum capacity and the projected growth in enrollment for future school terms.

## PROPOSED CONSTRUCTION

As a result of the school survey report recommending the construction of a new elementary school in Clewiston, the School Board has filed with the Court a schematic floor plan prepared by W. R. Frizzell Architects, Inc. The School Board proposes to construct the new elementary school in three phases. Phase one of construction is designed to house all students in intermediate grades three, four and five with a proposed capacity of 650 students and with a target completion date for the fall term of 1975. Phase two of construction will house all students in grades one and two. Phase three is designed to accommodate the administrative offices of the elementary school, a cafeteria and a multi-purpose area. Projected dates for completion of phases two and three have not been determined. Upon completion of the first phase of construction, all students in grades three, four and five will be housed in the new elementary school. Until phase two is completed, grades one and two, totalling approximately 450 students, will remain in the present Clewiston Elementary School, thus permitting sub-standard buildings and classrooms to be used for non-instructional purposes.

The School Board proposes to build the new elementary school on a site adjacent to the Clewiston Middle School upon land to be donated to the School Board by the United States Sugar Corporation. This site was selected by the School Board because of the availability

of the land and its close proximity to both the white and black community. The proposed site is 1.10 miles from the present Clewiston Elementary School and 1.45 miles from Harlem Academy and is midway between the two facilities. While the proposed site has been described as being located in a white area, there are very few persons, either white or black, who live in the immediate area or in direct proximity thereto. The location is central to both blacks and whites in Clewiston, said location being for all intents and purposes almost exactly between the black and white communities. The school survey report of the Florida Department of Education initially recommended a site in the northwest section of Clewiston on State Highway 27. Survey Director James Lee testified that the northwest site was recommended based upon predicted growth in that area. At the request of the School Board, Mr. Lee conducted a resurvey of the proposed northwest site location and determined that the recommendation was unsound, being too far removed from the main Clewiston area. The present site recommendation of the Department of Education is any area west-central in Clewiston and south of State Highway 27. Mr. Lee testified that the proposed site adjacent to the Clewiston Middle School would satisfy the recommendations of the Department of Education.

One factor considered by the School Board in selecting a site next to the Clewiston Middle School was the minimal impact upon bussing. At the present time approximately half of the 2,300 students in the Clewiston area are bussed. Sixty percent of the bussed students are black and 40 percent are white. George H. Steele, Superintendent of the Hendry County Schools, testified that locating the new elementary school west on State Highway 27 would increase the total number of children bussed to school, whereas less bussing would be required at the Middle School site since more children would live within a two-mile radius of that location. While nei-

ther Florida statutory law nor Department of Education regulations requires the School Board to bus students living within a two-mile radius of the school they attend, Superintendent Steele testified that bussing would be provided by the School Board to students living within the two-mile radius without cost. Because the proposed Middle School site is more centrally located, the distance bussed students must travel, including black students in the Harlem area, will actually decrease.

Another factor considered by the School Board in selecting the site adjoining the Middle School was the fact that this property will be donated to the School Board by the United States Sugar Corporation. If another site were selected, financing to acquire the property would be necessary. The projected cost of constructing phase one of the elementary school facility is between 1.3 and 1.5 million dollars. Superintendent Steele outlines three principle sources of funding for the new facility, consisting of State bond revenues, operating funds of $300,000 and other amounts accruing to the Hendry County School System.

## FEASIBILITY OF RENOVATING HARLEM ACADEMY

The sole objection of the intervening plaintiffs to the proposed construction of a new elementary school is that "there is no need for a new elementary school while Harlem Academy is available for greater use." The Orders of this Court entered October 29, 1971, and September 17, 1973, have approved the utilization of Harlem Academy for valid school purposes, although Harlem Academy is not serving as a regular elementary school facility within the Hendry County system.

The intervening plaintiff's continued dissatisfaction with this Court's Orders regarding Harlem Academy have apparently prompted the allegations contained in their memorandum filed January 31, 1974, that the Hendry County School system "is still dual in nature and not

unitary in all aspects from an educational standpoint." The Court deems these allegations frivolous and irresponsible since all students in one grade are assigned to one school in the Clewiston area in accordance with this Court's Memorandum Opinion entered August 4, 1971. Moreover, during the course of hearings conducted by this Court on August 23, 1972, May 3, 1973, and February 1, 1974, the intervening plaintiffs failed to present to the Court a single item of evidence or any testimony questioning the completely unitary system found by the Court to be achieved as of October 29, 1971. Furthermore, the undersigned judge personally inspected the Hendry County schools on April 3, 1973, and the Court was gratified and encouraged by the complete and total integration existing throughout the school system.

The Court nevertheless concurs with the view of the intervening plaintiffs that the feasibility of renovating Harlem Academy must be considered as an alternative to new construction and, further, that if utilizing Harlem Academy would alleviate the overcrowding and inadequacies of Clewiston Elementary School, new construction should not be approved.

Harlem Academy is presently being utilized for valid school purposes and is fully integrated as a special education and kindergarten facility. As more fully stated in this Court's Order of September 17, 1973, the educational activities presently conducted at Harlem Academy include an early childhood learning and day care center, a migrant kindergarten program, vocational and shop classes and the athletic program for physical education of the Clewiston Middle School. Additionally, the school district administrative offices are located at Harlem Academy, and its cafeteria and kitchen facilities are used to prepare meals for Clewiston Middle School as well as for Harlem. Since this Court's Order of September 17th, the programs offered at Harlem Academy have been expanded to include classes for educable mentally retarded, trainable mentally retarded children and the regular public kindergarten for the Clewiston area. Florida Statutes § 228.051, F.S.A. effective in the fall of 1973, provides for a mandatory public kindergarten program for five-year-olds to be offered by each school system. Although the kindergarten program must be offered by the school system, attendance by pre-school children is optional. Superintendent Steele testified that 35 per cent of the eligible pre-school children have elected to attend the kindergarten program, and all such children are housed in classrooms at Harlem Academy. Howard McKire, principal of Harlem Academy, testified that the racial composition of the public kindergarten classes is 53 per cent black, 41 per cent white and six per cent Indian and Spanish-speaking. Superintendent Steele testified that, should Harlem Academy be utilized for regular elementary school classes, there are no existing school facilities to which the various Harlem programs could be transferred.

The present maximum capacity of Harlem Academy is 480 pupil stations. The survey conducted by the Department of Education concluded that Harlem Academy could house 600 pupils, and Survey Director Lee testified that the survey team considered using Harlem Academy to house the elementary grades in Clewiston. Lee stated that the survey team rejected this alternative because construction of additional facilities would be necessary to house the school programs presently conducted in Harlem Academy and that renovation of Harlem Academy to house the elementary grades would also be required. Based upon the present school plant survey, the Florida Department of Education will not permit renovation of Harlem Academy. According to Lee, major expenditures at Harlem Academy cannot be authorized by the Department of Education without eliminating the proposed construction of the new elementary school and without a request for deviation from the recommended order of construction priorities.

Such a course of action would require a resurvey of school plants by the Department of Education.

At the hearing considerable testimony was elicited with regard to implementing the "Educational Specifications" adopted by the School Board in April, 1973 and approved by the Florida Department of Education in the fall of 1973. Drafted by the School Board, the educational specifications set forth the philosophy and objectives of the Board in elementary education and the desired educational facilities. The specifications indicate that the new elementary school plant should include "a mixture of flexible space and fixed space capabilities." Such a facility may be termed a "modified-open school," to be distinguished from a totally "open space school." Superintendent Steele testified that the School Board's policy goal of "individualized instruction" could be achieved in the proposed new facility but could not be achieved at the Harlem facility. Architect William Frizzell, who has served as architect for the Hendry County School Board continuously since 1959 and who drafted plans used to construct portions of Harlem Academy and the new LaBelle Elementary School plant, testified that Harlem Academy is not amenable to either the open or modified-open school concepts and that the Harlem facility is not compatible with the educational philosophy of individualized instruction.

Frizzell stated that he conducted an in-depth study in February of 1970 of the feasibility of rehabilitating Harlem Academy. He estimated the cost of renovating Harlem to be between $238,000 and $290,000. According to Frizzell, construction costs have risen 49 percent since the date of this study. The initial buildings at Harlem Academy were constructed in 1953, and additional buildings were constructed in 1957. The oldest buildings were constructed economically and are now showing structural stresses. Frizzell described the condition of the present structures as very poor to fair. Rehabilitation of Harlem Academy would require considerable rebuilding to correct structural failures as well as the addition of carpeting, air conditioning and complete redesign of lighting facilities.

On behalf of the intervening plaintiffs, educational planning consultant William Field, the developer of the open school concept, testified that Harlem Academy could be remodeled to accommodate an open school concept and to implement the School Board's goal of individualized instruction. Mr. Field presented a schematic floor plan of Harlem Academy redesigned and converted to an open school facility.

While the School Board's goals of individualized instruction for the elementary school grades to be realized in a modified open school plant facility may be educationally sound, the function of this Court is not to sit as a super School Board determining preferable types of educational plants and instructional facilities whether they be open, modified-open or closed systems. This Court must determine whether the construction of a new elementary school is constitutionally permissible in light of the presently existing facilities contained within a unitary school system. Thus, the Court attaches little or no importance to the testimony concerning the open and modified-open school concepts and the School Board's goal of individualized instruction. Moreover, Survey Director Lee of the Florida Department of Education testified that the Educational Specifications of a county School Board are not considered in formulating recommendations made by a School Survey team. According to Lee, Educational Specifications are often completed after the survey report has been made.

## MAINTAINING A UNITARY SYSTEM IN HENDRY COUNTY

Careful consideration must be given to the question of proposed school construction, and construction of a new facility cannot permit resegregation of a former dual school system. United States v. Board of Public Instruction of

Polk County, Florida, 395 F.2d 66, 69 (5th Cir. 1968); Monroe v. Board of Commissioners of City of Jackson, Tennessee, 427 F.2d 1005, 1009 (6th Cir. 1970); Lee v. Macon County Board of Education, 267 F.Supp. 458, 481 (M.D. Ala.1967). The Supreme Court has emphasized the far-reaching effects of new school locations, stating:

> The construction of new schools and the closing of old ones are two of the most important functions of local school authorities and also two of the most complex. They must decide questions of location and capacity in light of population growth, finances, land values, site availability, through an almost endless list of factors to be considered. The result of this will be a decision which, when combined with one technique or another of student assignment will determine the racial composition of the student body in each school in the system. Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 20, 91 S.Ct. 1267, 1278, 28 L.Ed.2d 554 (1971).

■ Thus, in determining the necessity as well as the location of a proposed new school in a unitary but previously dual school system, factors to consider include the following:

1. population growth;
2. finances;
3. land values;
4. site availability;
5. racial composition of the student body;
6. racial composition of the neighborhood of the proposed school and the residence of the students;
7. capacity and utilization of existing facilities;
8. transportation requirements;
9. the location of a proposed school to maintain equality in the burden of bussing between blacks and whites;
10. recommendations by the State Department of Education;
11. potential for future re-segregation.

■ The United States has filed a memorandum stating that it has no objection to the School Board's proposed construction of a new elementary school nor to the proposed site selected for the school. Upon careful consideration of the above-stated factors, the testimony presented at the hearing conducted on February 1, 1974 and the entire record in this cause, the Court makes the following findings.

The proposed construction of a new Clewiston Elementary School is constitutionally permissible and educationally sound, and the established unitary school system in Hendry County and Clewiston will not be disturbed. The construction of a new elementary school will not have the effect of resegregating students now or in the future since the entire student population of the present elementary school will be transferred in two phases according to grades to the new facility. Maintaining a single grade assignment to one school is consistent with desegregation plan approved by this Court on August 4, 1971. Thus, the racial composition of the student body will continue to be completely integrated.

Of utmost concern to the Court has been the capacity and utilization of existing facilities. It is clear to the Court that both the present Clewiston Elementary School and Harlem Academy are old and aging facilities in need of extensive repairs. Clewiston Elementary School is almost totally inadequate as an educational plant and Harlem Academy suffers major structural deficiencies. Although the elementary school growth rate is not phenomenal, it is steady. Combined use of the present elementary school and Harlem Academy would not prove practicable in light of costs of rehabilitation of both plants, the limitations of the total student capacity and the unpromising end result of attempted restorations. Moreover, elementary grade use of Harlem Academy would require the special education programs and

public kindergarten classes to vacate Harlem without another available school facility to receive such a transfer. The need for a new elementary school in Clewiston is apparent, and the construction of a new school is entirely appropriate, both from a constitutional and educational viewpoint.

The Court finds the location of the new school proposed by the School Board on land adjacent to the Clewiston Middle School to be ideal. The immediate vicinity of the site reflects a very sparce white population, and the location is centrally located for both black and white students. The site is available through a donation by the United States Sugar Corporation, and thus land value and land financing need not be considered. There will be no increase in transportation requirements, and equality in the burden of bussing will be maintained. Although black students will be closer to and within a two-mile radius of the new facility, the School Board will continue to provide free transportation to students. Thus, the proposed site will have the effect of reducing the distance students must travel to school. The proposed construction and location of the new elementary school conforms to the recommendations of the Florida Department of Education and has the approval of the United States, the School Board and the Court.

This Court in its Memorandum Opinion and Order entered October 29, 1971 found that a unitary school system had been achieved in Hendry County. The construction of a new Clewiston elementary school for housing both black and white students in no way adversely affects the Court's previous finding that the school system in Hendry County is in fact unitary. Conversely, the construction and use of the proposed elementary school will be in furtherance of this Court's plan, desire and effort to maintain the complete integration of the school system and in fact undergirds and supports the previous finding and ruling of the Court that the Hendry County School System has become and shall continue to operate as a completely unitary system. Thereupon, it is

Ordered and adjudged as follows:

1. That the proposed construction of a new elementary school in Clewiston upon the proposed site adjacent to the Clewiston Middle School be and the same is hereby approved, and the motion of the School Board is hereby granted.

2. Upon completion of the new facility the School Board shall continue to provide free transportation to students living within a two-mile radius of the elementary school facility.