**UNITED STATES, Plaintiff,**

**Sheanda Bryant, et al.,**
**Plaintiff-Intervenors,**

**v.**

**LAWRENCE COUNTY SCHOOL DISTRICT, Defendant.**

**Civ. A. No. H–2216(L).**

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Jan. 10, 1986.

---

Suzanne Griggins, Community Law Office, Mendenhall, Miss., and Jean Pettenati, Civil Rights Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff/plaintiffs-intervenors.

Kenneth A. Rutherford, Susan L. Runnels and Thomas Price, Alston, Jones & Davis, Jackson, Miss., and Malcolm T. Rogers, George & Rogers, Monticello, Miss., for defendant.

## MEMORANDUM OPINION

TOM S. LEE, District Judge.

Following initiation of this action by the United States in 1967, the Fifth Circuit Court of Appeals entered orders in November 1969 enjoining discrimination on the basis of race in the Lawrence County Public School System. Pursuant to the modified plan developed to desegregate the school system, students in grades 1 through 12 residing in the northeast sec-

tion of Lawrence County attend New Hebron School and students in grades 1 through 12 who live in the southwest section of the county attend Topeka Tilton School. The remaining students live in zone 2 and attend Monticello High School and McCullough Junior High School in grades 5 through 12; elementary students living in the eastern portion of zone 2 attend Beulah Williams School and those in the western section attend Monticello Elementary School.

On January 9, 1974,[1] the Fifth Circuit entered an order which stated in part:

It now appears that the Lawrence County School District School system has been and is being maintained as a unitary school system in compliance with the aforesaid orders, and it further appearing that it would be appropriate to transfer jurisdiction of the case to the district court under a final order there to be entered as follows:

Under that order, the case was transferred to the inactive docket of this court but was subject to reopening upon a showing of good cause; the defendant continued to be bound by previous orders in the case including the requirement to file semi-annual reports. The case was reopened in March 1984 by the United States to enjoin the defendant from accepting students from other counties in violation of the 1969 order.[2] Judge Dan M. Russell, Jr. found that the defendant was in violation of the 1969 orders in permitting enrollment of nonresident students and ordered compliance.

In July 1984, plaintiff-intervenors[3] filed a complaint against the Lawrence County School District (hereinafter sometimes referred to as the "School District" or the "District") alleging various violations of the 1969 orders and requesting that the court enjoin school construction which was funded by a bond issue approved by the Lawrence County electorate in May 1984.[4] Following an evidentiary hearing, this court denied plaintiff-intervenors' motion for preliminary injunction on the construction issue. On appeal, the Fifth Circuit affirmed and suggested that the district court consider enjoining further execution of contracts and determine the effect of the language in the 1974 order that the Lawrence County School System "has been and is being maintained as a unitary school system."[5] The parties briefed the issue

1. The order was docketed with this court on November 9, 1974.

2. The Lawrence County desegregation order contained a *Singleton* provision which stated: *Attendance Outside of System of Residence* if the school district grants transfers to students living in the district for their attendance at public schools outside the district, or if it permits transfers into the district of students who live outside the district, it shall do so on a nondiscriminatory basis, except that it shall not consent to transfers where the cumulative effect will reduce desegregation in either district or re-enforce the dual school system.

3. Plaintiff-intervenors, Sheanda N. Bryant, Lewis Devon Bridges, Angela Showers, Eric Bridges and Lesonya Bryant, are black minor residents of Lawrence County and are students enrolled in the schools of the Lawrence County School District. The suit is brought by their parents and next friends, Eugene Bryant, Lewis Bridges, Billy Showers, Amos Bridges and Willie Lee Funches.

The United States investigated the allegations raised in plaintiff-intervenors' complaint and is negotiating with Lawrence County to resolve issues regarding employment and student trans-

fer policies which, in the opinion of the United States, violate the 1969 orders. The United States did not participate in the trial.

4. The defendant proposes to use the bond issue proceeds to construct a new air-conditioned elementary school at Monticello; a new vocational-technical center on the Monticello High School campus; a new air-conditioned classroom at New Hebron; new class rooms, band hall, kitchen and cafetorium at Topeka-Tilton; and new classrooms at Beulah Williams.

5. In its opinion, the Fifth Circuit stated:

We are unable to determine whether [the 1974 order] meant that the school district was on the way to discharging its constitutional duty by complying with the court orders or whether at that time it had fulfilled its constitutional duty to disestablish the dual system.

The Fifth Circuit's opinion stated that, if the school system were not unitary, the building program and the Board's plan should have been designed *"to promote integration* rather than to avoid reinstating segregation." (emphasis original). *But see Swann v. Charlotte-Mecklenburg Bd. of Ed.,* 402 U.S. 1, 21, 91 S.Ct. 1267, 1278–79, 28 L.Ed.2d 554 (1971) (non-unitary school obli-

and the court issued an order finding that the School District was not found to be unitary by virtue of the 1974 order. The court also enjoined further execution of contracts by the District and set the case for an expedited trial.

At the pretrial conference, the parties stated that only the issues of the defendant's current desegregation plan, the proposed construction plan, transportation and faculty assignment were to be considered at trial, the other issues being negotiated for settlement.[6]

■ The initial question for consideration is, of course, jurisdiction. In a previous order, this court determined that the School District had not been declared unitary. A declaration of unitariness involves a finding that a school system has eradicated the dual school system and is no longer in violation of the United States Constitution. See Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 31–32, 91 S.Ct. 1267, 1283–84, 28 L.Ed.2d 554 (1971). Because the Lawrence County School District has not been found to be unitary, this court has jurisdiction.

## ATTENDANCE PLAN

Plaintiff-intervenors object first to the attendance plan currently being utilized by the defendant. The present plan consists of the 1969 court-ordered plan with changes implemented independently by the School District, including the closing of Silver Creek School in 1981 [7] and the proposed bussing of students to Monticello for vocational-technical and advanced classes.[8]

Of the five schools in the county, two,[9] Topeka Tilton and Beulah Williams, are arguably racially identifiable in that they have student bodies which are predominantly of one race.[10] The use of statistical data is, however, "no more than a starting point" in this court's analysis. Swann, 402 U.S. at 24, 91 S.Ct. at 1280. See Price v. Denison Independent School District, 694 F.2d 334, 356 (5th Cir.1982); Carr v. Montgomery County Board of Education, 377 F.Supp. 1123 (M.D.Ala.1974), aff'd, 511 F.2d 1374, rehearing and rehearing en banc denied, 511 F.2d 1390 (5th Cir.), cert. denied, 423 U.S. 986, 96 S.Ct. 394, 46 L.Ed.2d 303 (1975). While the presence of racially identifiable schools is not per se offensive of the Constitution, the School District must demonstrate that such schools are not vestiges of past discrimination. See Davis v. East Baton Rouge School Board, 721 F.2d 1425, 1434 (5th Cir.1983); Valley v. Rapides Parish

gated to "see to it that further school construction and abandonment is not used and does not serve to perpetuate or re-establish the dual system); Lee v. Macon County Bd. of Ed., 584 F.2d 78, 81 (5th Cir.1978) (non-unitary school has duty "to take no actions which would reinstitute a dual school system ..."); United States v. Lawrence County School District, 5th Cir., 1969 order ("All school construction, school consolidation and site selection ... shall be done in a manner which will prevent the recurrence of the dual school structure ...").

6. Plaintiff-intervenors, prior to trial, filed a motion for certification of class. By agreement of the parties, the motion is held in abeyance.

7. The defendant offered no reason for the closing of the Silver Creek school which, before it was destroyed by fire, was located near Beulah Williams. Plaintiff-intervenors apparently do not object to the closing.

8. The defendant has never sought approval of any of these deviations from the court-ordered plan and apparently does not do so now.

9. Plaintiff-intervenors contend that New Hebron, which has a 35.5% black student body, is racially identifiable. The percentage of black students at New Hebron, however, varies by only 8.3 percentage points from the district-wide ratio. In his opinion of June 25, 1984, Judge Russell stated that "[t]he school which was traditionally white, New Hebron, remains so ...," relying on enrollment figures at New Hebron for the 1982–83 school year. At that time New Hebron was only 31.8% black.

10. According to the October 1985 report to the court, the racial populations of the county schools were as follows:

| | Black | White | % Black |
|---|---|---|---|
| Monticello High | 175 | 180 | 49.3 |
| McCullough Jr. High | 351 | 328 | 51.7 |
| Monticello Elementary | 304 | 234 | 56.5 |
| New Hebron | 172 | 313 | 35.5 |
| Topeka Tilton | 51 | 443 | 10.3 |
| Beulah Williams | 164 | 66 | 71.3 |
| TOTAL—DISTRICT | 1217 | 1564 | 43.8 |

*School Board,* 702 F.2d 1221, 1226 (5th Cir.1983); *Price v. Denison,* 694 F.2d at 349. Assuming that Topeka Tilton and Beulah Williams are considered racially identifiable, the result is that those schools enroll 26.04% of all students in the county and 17.67% of the county's black students. While a school system ideally should include no schools which are even arguably racially identifiable, the court is of the opinion that geographic and demographic factors peculiar to Lawrence County prohibit this ideal result.[11] The Pearl River, which traverses Lawrence County from north to south, is crossed by only two bridges, one in Monticello and one approximately three miles north of Monticello, thus limiting easy access from all parts of the county to Monticello, which is the county seat and has a population of about 2000. The southwestern and northeastern sections of the county are predominantly white while the black community is concentrated in the southeastern and northwestern portions of the county. This geographic separation of the races was not shown to be caused by any prior discriminatory acts on the part of the defendant. Additionally, the ratios in the schools do not differ substantially from those projected in the original plan approved in 1969.[12] It appears from the evidence, however, that the racial composition of the schools has been adversely affected by the defendant's leniency in regard to zone jumping. According to plaintiff-intervenors, a number of whites cross attendance zone lines and county lines to avoid majority black schools, especially Beulah Williams. Therefore, strict enforcement of the attendance zones should alleviate a substantial portion of the racial imbalance by decreasing the number of whites at Topeka Tilton and New Hebron while increasing the number of whites at Beulah Williams.[13] The parties have represented to the court that they are attempting to reach agreement on the means by which zone jumping can be prevented.

■ With proper enforcement of school attendance zones, this court is of the opinion that the current school attendance zone plan in effect in Lawrence County satisfies the constitutional standard of "promis[ing] realistically to work *now.*"[14] (emphasis original). *Green v. County School Board,* 391 U.S. 430, 439, 88 S.Ct. 1689, 1695, 20 L.Ed.2d 716 (1968).

Plaintiff-intervenors presented seven alternate plans for consideration by the court, all of which involve some degree of consolidation.[15] The court rejects those

11. The court recognizes that, while such factors are to be considered in formulating a desegregation plan, "they do not work to relieve the Board of its constitutional responsibilities." *Davis v. East Baton Rouge Parish School Bd.,* 721 F.2d 1425, 1435 (5th Cir.1983).

12.

| | % Black—1970 | % Black—1985 |
|---|---|---|
| Monticello High | 50.6 | 49.3 |
| McCullough | 46.6 | 51.7 |
| Monticello Elementary | 38.9 | 56.5 |
| New Hebron | 38.3 | 35.5 |
| Topeka Tilton | 19.2 | 10.3 |
| Beulah Williams | 48.4 | 71.3 |
| TOTAL DISTRICT | 41.3 | 43.7 |

13. Since Judge Russell ordered compliance with the zone lines, the proportion of whites at New Hebron has already decreased by 3.7 percentage points, bringing the black-white ratio at the school nearer to that of the district.

14. Judge Russell's May 18, 1970 opinion rejecting a consolidation plan found that the preservation of New Hebron and Topeka Tilton preserved these two schools as the heart of their respective communities, affords a closer relationship between the school and their patrons, eliminates increased travel time up to an added hour and one-half per day for many students, and permits a broader base for student participation in class and team effort than afforded by one high school.

This court acknowledges that neighborhood schools promote "worthy community values", but its approval of the present attendance zones is based on the plan's effectiveness in furthering the "constitutional imperative of desegregation." *Valley v. Rapides Parish School Bd.,* 702 F.2d 1221, 1229 (5th Cir.1983).

15. Plaintiff-intervenors' complaint sought strict enforcement of the present zone lines.

Defendant's argument that the doctrine of res judicata bars litigation of plaintiff-intervenors' claims regarding consolidation requires little discussion as it is without merit. A school district has a continuing obligation to *seek* means of eradicating the vestiges of a dual system, a duty which may not be satisfied by rigorous

plans because it finds that, with proper enforcement of attendance zones, the current plan passes constitutional muster. It should be further noted that consolidation will involve extensive additional bussing, burdening both students and the financial position of the District.[16] Contrary to plaintiff-intervenors' conclusions drawn from capacity data compiled by Dr. William B. Field, a facilities planning expert, consolidation would require either additional buildings or severe overcrowding of classrooms, neither of which is desirable.[17]

## SCHOOL CONSTRUCTION

■ Plaintiff-intervenors challenge the District's proposals for school construction to be funded by proceeds of the 1984 bond issue. In *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 21, 91 S.Ct. 1267, 1278–79, 28 L.Ed.2d 554 (1971), the United States Supreme Court recognized that

> in ascertaining the existence of legally imposed school segregation, the existence of a pattern of school construction and abandonment is thus a factor of great weight. In devising remedies where legally imposed segregation has been established, it is the responsibility of local authorities and district courts to see to it that further school construction and abandonment is not used and does

not serve to perpetuate or re-establish the dual system.

In *Tasby v. Estes*, 517 F.2d 92, 105–06 (5th Cir.1975), the district court had approved the school system's proposed construction plan. The Fifth Circuit Court of Appeals determined that "the school authorities in the district court ha[d] not accorded proper weight to the racial composition of student bodies in considering the selection and acquisition of new sites and new facilities." *Id.* at 106. The Fifth Circuit reversed and remanded with directions that the district court "evaluate all the site acquisition, school construction and facility abandonment plans put forward by the [school district] in light of the impact which these undertakings will have upon the disestablishment of the dual school system." *Id.* at 110. At trial, Denson Deavers, Superintendent of Lawrence County Schools, testified that the effect on desegregation was one factor considered by the school board in developing its construction plans and in choosing a site for Monticello Elementary School.[18] The court is of the opinion, based upon its review of the evidence presented, that the proposed construction plan satisfies the board's "affirmative duty, overriding all considerations with respect to the locating of new schools, except where inconsistent with 'proper operation of the school system as a whole', to *seek* means to eradicate the vestiges of the dual sys-

---

adherence to a previous court order. *See Taylor v. Quachita Parish School Bd.*, 648 F.2d 959, 968 n. 10 (5th Cir.1981). *Bronson v. Board of Ed.*, 525 F.2d 344 (6th Cir.1975) does not hold otherwise as it deals with a previous finding that the school district was not in violation of the constitution and not with the question of remedy which is at issue here.

**16.** Superintendent Deavers testified that the state would not fund the duplicative bussing involved in partial consolidation.

**17.** Superintendent Deavers testified that the Board considered total consolidation of the system and consolidation of the high schools but found the cost of additional facilities and bussing to be prohibitive. The Board also considered a plan for two county schools, one on either side of the Pearl River, but determined

that such a plan would result in severe racial imbalance.

**18.** In *Tasby*, the school superintendent stated that race was considered by the board but that the overriding consideration in developing the construction plan was providing facilities for students in the established attendance zones. The Fifth Circuit found this to be inadequate because the zones had been previously used to implement the "neighborhood school concept" which resulted in perpetuation of the vestiges of a dual school system. *Tasby*, 517 F.2d at 106. Therefore, because race was merely a factor and not the overriding consideration in the deliberations of the Lawrence County School Board, that Board did not satisfy its constitutional obligations as set out in *Tasby* and the plan must be reviewed by this court under the proper standard.

tem."[19] *United States v. Board of Public Instruction*, 395 F.2d 66, 69 (5th Cir.1968). *See also United States v. Texas Education Agency*, 532 F.2d 380, 398 (5th Cir.1976).

Plaintiff-intervenors object to the site proposed for construction of a new Monticello Elementary School.[20] The proposed site is approximately 400 yards from the present location of Monticello High School. The site is currently a pasture surrounded by a white church, a white housing project, a Little League field and pine trees.[21] Although the nearby church and residences are white, because of the sparse population, it cannot be said that the area is racially identifiable or more easily accessible to students of one race. Additionally, Monticello Elementary School, which is approximately 57% black, would continue to serve the same attendance area; accordingly, the school is not intended to be a one-race school. The evidence presented at trial did not show that alternate sites identified by plaintiff-intervenors were actually available,[22] appropriate for a school building and facilitative of desegregation.[23]

The court is of the opinion that the site chosen, for the reasons stated above, will not be a factor tending to resegregate the Lawrence County schools. Furthermore, because the new facility will replace a building which was, prior to 1969, a white school, it will serve to promote the desegregative purpose in providing a facility which has no ties to a particular race.

The 1984 bond issue provides for improvements and additions to the facilities at New Hebron, Topeka Tilton and Beulah Williams. The changes do not involve construction of a new school at a new location and, therefore, raise issues different from those considered in *Tasby* or with reference to the proposed new Monticello Elementary School. The evidence clearly established that the proposed construction at those schools is necessary to provide a safe and effective learning environment and to comply with state requirements for kindergarten classes. Furthermore, the evidence failed to show that New Hebron and Topeka Tilton, predominantly white schools, were receiving the benefits of those improvements to the detriment of Beulah Wil-

**19.** In addition to this responsibility, the Board was also bound by the school construction provision of the 1969 orders, the relevant text of which is reprinted at footnote 5.

**20.** Plaintiff intervenors stipulated that the present Monticello Elementary School is in poor condition and should be replaced, but presented evidence, without objection by defendants, that renovation of the present facility should be considered. The evidence showed overwhelmingly that the location of Monticello Elementary School, which is comprised of four unconnected buildings, at the intersection of two major roadways in downtown Monticello provides a poor and unsafe educational environment to the point of interfering with proper operation of the school. Additionally, the present buildings do not qualify for insurance required by the state.

Plaintiff-intervenors also object to defendant's proposal to build the Vocational Technical Center on the Monticello High campus, but offered no evidence on that point. Final site selection for the center has not been made.

**21.** According to Mississippi Highway Department plans, the land may soon be traversed by a highway. The District's architect has developed plans, however, which allow for the building in

the event the highway is constructed across the property.

**22.** Defendant offered affidavits of owners of the sites proposed by plaintiff-intervenors stating that the sites are not for sale. One of the landowners stated by affidavit dated December 12, 1985 that he was unwilling to sell and by affidavit offered by plaintiff-intervenors that he was. Neither party attempted to explain the conflict and the court cannot conclude that the land was actually available for sale. Even if the owner were willing to sell when the District needed to purchase the property, the court is of the opinion that selection of that location would not further desegregation any more than the site chosen. Plaintiff-intervenors have not provided the court with sufficient facts from which to find the desegregative superiority of their choice. The court is influenced by the fact that the subzone which Monticello Elementary serves is not large or densely populated.

**23.** The factors considered by this court are those considered by the court in *Brewer*, 397 F.2d at 42 which was cited with approval by the Fifth Circuit in *Tasby*, 517 F.2d at 105–06. The court approved similar factors in *Copeland v. Lincoln Parish School Bd.*, 598 F.2d 977, 981 (5th Cir.1979).

liams or McCullough, the schools in the county which are historically and predominantly black.[24] The video tapes admitted into evidence at the hearing on the motion for preliminary injunction showed that the bond issue proceeds were being used at all three schools to remedy conditions that interfered with effective education. Plaintiff-intervenors argue that consolidation of the county schools is necessary to achieve desegregation and that renovation of the facilities at New Hebron and Topeka Tilton, which would be closed under a consolidation plan, will hinder this ultimate objective.[25] For reasons stated previously in this opinion, the court concludes that consolidation is not necessary in Lawrence County.

Accordingly, this court is of the opinion that the District's construction plans satisfy the constitutional obligations.

## TRANSPORTATION

■ Plaintiff-intervenors also contend that the Lawrence County School District maintains segregated buses and bus routes. Not until 1980, more than ten years after the Fifth Circuit orders to desegrate, when a black, James Hill, became transportation director, did the District dispense with segregated bus routes for blacks and whites. Eugene Bryant, a black, testified that he had ridden his child's bus and it had many blacks on it. School District transportation records establish that some buses do have a substantial majority of riders of one race. The court's review of the bus route map does not indicate that the bus routes are gerrymandered to effectuate segregated buses. Any racial imbalance that does occur is caused by the location of black and white communities, which was not shown to be the product of past discriminatory acts. Therefore, the court is of the opinion that plaintiff-intervenors should not prevail on this claim.

## TEACHER ASSIGNMENT

Plaintiff-intervenors finally contend that the school district is in violation of the 1969 orders regarding teacher assignment. The issue of teacher assignment is apparently closely tied to the district's hiring policy which is to be the subject of a proposed consent decree. The court will retain under advisement the issue of teacher assignment pending the outcome of settlement negotiations by the parties with reference to hiring.

An order in conformance with this opinion shall be entered, at which time the preliminary injunction entered by order dated November 1, 1985 shall be dissolved.

---

**24.** Deavers testified that the Board makes repairs depending on the need and available funding and does not discriminate against any schools.

Plaintiff-intervenors also argue that the defendant discriminates against predominantly or historically black schools in the funding of curriculum enhancements. Until this suit was initiated, Beulah Williams did not offer band, chorus or gifted programs which are provided through most of the other schools. Whatever the reason for the previous inequity in programming, the enriched curriculum is now in place at Beulah Williams and presumably will continue. It should be noted that the students at Beulah Williams, which is over 70% black, consistently score higher on the California Achievement Test than other students in the county.

**25.** Plaintiff-intervenors contend that the district is creating excess capacity to ensure continued use of the present configuration of schools in the county. Dr. William B. Field visited the schools and concluded that most of the classroom space to be added by 1984 bond issue proceeds is unnecessary. Because Field's data relied on having the maximum number of students in each class all day without considering the necessity or advantages of smaller classes, the court finds that usable capacity does not substantially exceed the district's needs. Both Dr. Field and Dr. Michael Stolee, a desegregation expert, recommended different scheduling methods to make more efficient use of available capacity. The court is of the opinion that decisions regarding scheduling are educational questions and, to the extent they are severable from constitutional issues, are best left to the discretion of the District. Furthermore, the use of stored capacity for a segregative purpose presupposes that families of a particular race will move into the zone from other parts of the county to take advantage of the excess capacity, evidence of which was not presented.